46

FOREST HILLS UTILITY CO., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE. (Two cases.)

OHIO FINANCIAL SERVICE CORP., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(Nos. 71-265, 71-791 and 72-125—Decided July 12, 1972.)

48

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown, & Newman* and *Mr. Rankin M. Gibson,* for appellant in case Nos. 71-265 and 71-791.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Sheldon A. Taft,* for appellant in case No. 72-125.

*Mr. William J. Brown,* attorney general, *Mr. Thomas P. Michael* and *Mrs. Sally Bloomfield,* for appellee.

CORRIGAN, J. The assorted factual patterns presented to this court in these causes have a common issue by virtue of R. C. 4903.13, requiring us, upon a consideration of the record, to determine whether the orders of the Public Utilities Commission are reasonable and lawful.

## I.

First in order is case No. 71-791, an appeal from final orders of the commission establishing sewer and water rates and the application for authority to issue securities.

Appellant urges as its proposition of law No. I that the commission's determination of the statutory rate base is unreasonable and unlawful.

In the case of *Cleveland* v. *Pub. Util. Comm.* (1956), 164 Ohio St. 442, this court pointed out that in a proceeding of this kind the statutes of Ohio and the decisions of this court indicate that the commission must do the following:

1. Determine the statutory rate base or reproduction cost new less existing depreciation.

2. Determine what percentage of the statutory rate base will yield a fair rate of return.

3. Determine the annual dollar return.

4. Determine annual expenses.

5. Determine gross annual revenues.

6. Fix rates for the service.

Forest Hills complains of error in ascertaining the statutory rate base, in determining the income allowable for expenses, in fixing the rate of return, and in computing the dollar annual return.

Under R. C. 4909.05, property valuations made by the commission are to be based upon reproduction cost new less existing depreciation. Specifically, Forest Hills complains of the omission from valuation of tract 4, one of the four tracts of land owned by the utility company, and asserts that the method of land valuation is improper.

Testimony adduced at the hearing indicates that, on the valuation date, June 30, 1969, tract 4 was vacant. The requirements of R. C. 4909.04 and 4909.05(B), as well as this court's holding in *Logan Gas Co.* v. *Pub. Util. Comm.* (1929), 121 Ohio St. 507, provide that only land "used and useful" may be considered in determining valuation. Thus, tract 4 was properly excluded from valuation.

To determine the land value of tract 2, the commission

used the assessment made by the auditor of Licking County for tax purposes as a base, performed a mathematical calculation, and arrived at a current value. This method does not follow the provisions of R. C. 4909.05 which, in part, direct the commission to show "the value * * * of each parcel of land * * * *by comparison with the value of contiguous and neighboring parcels of land, and land of similar character as to location and use.*" (Emphasis added.) Thus, the method employed by the commission in the valuation of the land in tract 2 was unreasonable and unlawful.

We will not consider appellant's second complaint, involving the commission's omission from valuation of distribution mains, valves, fire hydrants, and excavation, since this issue was not raised in the application for rehearing, and we must adhere to R. C. 4903.10 and decisions of this court. See *Agin* v. *Pub. Util. Comm.* (1967), 12 Ohio St. 2d 97, and cases cited therein.

The next claim of error concerns the allowance for engineering and surveying costs. Appellant asserts that the commission should have allowed 12 percent of the total construction costs rather than reducing the percentage to 7½ percent on construction costs in excess of $100,000. This percentage difference amounts to more than $12,000. However, we find no error in the commission's action, because such reduction is supported by uncontradicted evidence of record.

The fourth claim of error consists of a refusal to allow for construction financing, construction supervision, and legal and administrative costs.

The commission relies upon *Dayton Power and Light Co.* v. *Pub. Util. Comm.* (1934), 292 U. S. 290, wherein the court disallowed organization and other preconstruction costs, saying, at page 310: "It is conjectural whether they would be incurred * * * and if incurred, in what amount. The appellant's position as a member of an affiliated system would have a tendency to reduce such expense to a minimum."

In *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1925), 267 U. S. 359, the court said, at page 362: "Reproduction value, however, is not a matter of outlay, but of estimate, and should include a reasonable allowance for organization and other overhead charges that necessarily would be incurred in reproducing the utility. In estimating what reasonably would be required for such purposes, proof of actual expenditures originally made, while it would be helpful, is not indispensable."

We are of the opinion that such costs are not conjectural, and, since appellant is not a member of an affiliated system, no reason exists to exclude from the rate base a reasonable estimate of such costs.

The final dispute relative to the rate base concerns lack of working capital. The commission predicated its refusal to include any allowance for that item in the rate base in view of the collection of the $50 water meter deposit from Forest Hills' customers, which aggregated $2,150. In *Cincinnati* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 395, paragraph five of the syllabus reads:

"In fixing telephone rates, customers' contributions in the form of accurals [*sic*] for the payment of taxes, deposits to secure the payment of customers' bills for service or as advances on installation charges, and collections of rents to be paid at future dates, *which will be constant with reasonable certainty in the foreseeable future and which are available for investments in material and supplies*, or for use as working capital, should be used as an offset on the allowance for working capital * * *." (Emphasis added.)

The money collected by Forest Hills is not an amount "constant with reasonable certainty," is not "available for investments," and therefore cannot represent an offset for working capital. The elimination of working capital from the rate base was erroneous.

We therefore hold that the rate base set by the commission is unreasonable and unlawful.

Appellant's proposition of law No. II urges that the

"commission's determination of the income allowable for expenses is unreasonable and unlawful."

The first item is a $1,900 reduction in maintenance and repair expense paid to Pheils Associates, Inc., a corporation whose directors interlock with the Forest Hills company. For this reason, and because of a conclusion by the commission that the $1,900 may have represented a nonrecurring expense, it was eliminated by the commission. No evidence supports the nonrecurring nature of this expense item; in fact, the staff report of the commission verifies payments made in excess of the claimed $1,900 expense. To disallow such expense based upon conjectures of corporate mismanagement is unreasonable, and, in this case, is against the manifest weight of the evidence.

Next, Forest Hills complains that no allowance was made for administrative and general expenses. It is significant to note that, while the appellant sought a $6,000 allowance, the commission staff allowed $4,800, but the commission disallowed any amount. Testimony was presented by at least three witnesses who estimated the amount of time spent by Pheils in operating the utility company. To disallow any amount for administrative expense incurred in operating Forest Hills is clearly against the manifest weight of the evidence and unreasonable and unlawful.

Proposition of law No. III of appellant reads:

"The commission's determination 'that a two percent rate of return on 48.42 percent of appellant's property devoted to public service is just and reasonable' is arbitrary, capricious, unreasonable, unlawful and confiscatory."

In fixing rates for appellant's property the commission allowed a six (6%) percent rate on 112 of the 216 lots comprising the Forest Hills Subdivision and a two (2%) percent rate on the remaining 104 lots.

R. C. 4909.39 specifies action to be taken by the commission if utility rates set by ordinance are found to be "unjust, unreasonable or insufficient to yield reasonable

compensation for the service * * *." In its order of October 22, 1971, the commission concluded that the rates and charges provided by Ordinance No. 58-70 were unjust and unreasonable. Under R. C. 4909.39, the commission shall fix and determine "*the* just and reasonable *rate*" to be charged by such public utility. (Emphasis added.) Nowhere has the General Assembly empowered the Public Utilities Commission to fix dual rates to be charged according to a customer's use or nonuse of the utility's service. Therefore, the commission acted both unreasonably and unlawfully in establishing two rates.

As to appellant's final contention in its proposition of law No. IV, complaint is made that the return allowed by the commission is insufficient to permit the appellant to make interest payments on the $150,000 indebtedness authorized by the commission. The annual return as computed totals $18,448. Appellant claims that interest payments on $150,000, at a ten percent rate, total $15,000, thereby resulting in a net effective return of only $3,448.

In *Ohio Fuel Gas Co.* v. *Pub. Util. Comm.* (1960), 171 Ohio St. 10, this court reversed an order of the commission which failed to properly consider a corporation having a debt and an equity capital in a total amount substantially equal to the statutory rate base. In the instant case, since the indebtedness has not yet occurred, interest expense, being *in futuro,* could not properly have been included in income allowed for expense. However, to enable Forest Hills to make improvements, the commission, in its order of October 22, 1971, authorized the incurring of this indebtedness. To now ignore such fact would be to invite bankruptcy. The commission cannot reasonably order a utility to make improvements, authorize that utility to incur debt to pay for the improvements, and then establish a rate for the utility which does not recognize such indebtedness. We hold such action of the commission to be unreasonable and unlawful.

Paragraph 13 of the syllabus of *East Ohio Gas Co.* v. *Pub. Util. Comm.* (1938), 133 Ohio St. 212, provides:

"Where the court determines that certain findings of the Public Utilities Commission are unreasonable and unlawful while others were properly made, and from the record the court is unable to substitute specific findings for those improperly made by the commission, it is the duty of the court to remand the proceedings to the commission, as a fact finding body, with instructions to carry out the rulings of the court and correct the findings which were found to be unreasonable and unlawful."

## II.

Turning now to case No. 71-265, appellant advances three propositions of law to support its appeal. We find no merit in the first and third of these, and concern ourselves with proposition of law No. 2, which reads:

"To the extent that an order of the Public Utilities Commission requires certain installations and improvements to the property of a public utility before such utility may claim and receive a just and reasonable rate for the services actually being rendered with its existing property and facilities, such order is contrary to law."

The order before us for review requires appellant to file plans and specifications for installation of iron removal equipment and water storage tanks; to file a time schedule for construction of said improvement; to return the meter deposit previously collected; and to report monthly the progress in complying with the commission's orders.

This order was issued by the commission on December 21, 1970. At that very time the commission had pending before it appellant's application to issue securities to make improvements in its sewer and water system and also had pending before it appellant's appeal from Ordinance No. 58-70 of the city council of Heath establishing sewer and water rates in Forest Hills Subdivision for a nine-year period. Appellant claims that these rates do not provide a fair return on the value of its property. These matters had not been acted upon by the commission on the date of the order.

This court held, in paragraph three of the syllabus of

*Elyria Telephone Co.* v. *Pub. Util. Comm.* (1958), 158 Ohio St. 441:

"Under the provisions of Sections 614-27 and 614-28, General Code [R. C. 4905.37 and 4905.38], the Public Utilities Commission possesses the power to require a utility to render adequate service, but it lacks the authority to require that certain installations and improvements be made before the utility may claim and receive a just and reasonable rate for the services actually being rendered with its existing property and facilities."

In light of the record before us demonstrating the facts before the commission when it issued this order, we hold that the order is unreasonable and unlawful, and is, therefore, reversed.

### III.

Finally, in case No. 72-125, which involves an "availability fee" charged to owners of unoccupied lots in the subdivision, not connected to the sewer and water systems and not receiving any sewer or water service from the utility, this court finds no statutory authority enabling the commission to impose such a fee. Accordingly, we hold that such order is unreasonable and unlawful, and is, therefore, reversed.

The orders of the Public Utilities Commission in case Nos. 71-265, 71-791 and 72-125 are reversed in the causes are remanded to the commission for further proceedings not inconsistent with the views expressed herein.

*Orders reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STEPHENSON, LEACH and BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for STERN, J.