47

Mohawk Utilities, Inc., Appellant, v. Public Utilities
Commission of Ohio et al., Appellees.

[Cite as Mohawk Utilities v. Pub. Util. Comm. (1974),
37 Ohio St. 2d 47.]

(No. 73-577—Decided February 6, 1974.)

48

*Messrs. Stouffer, Wait & Ashbrook* and *Mr. William G. Harrington*, for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Keith F. Henley* and *Mr. Barth E. Royer*, for appellee Public Utilities Commission.

*Messrs. Berry & Kirk,* for appellee Lake Mohawk Property Owners Association.

WILLIAM B. BROWN, J. The commission, in its opinion and order, concluded that:

"(5) The recent decision of the Ohio Supreme Court in *Forest Hills Util. Co. v. Pub. Util. Comm.* (1972), 31 Ohio St. 2d 46, decided July 12, 1972, is dispositive of the issues in the instant case.

"(6) Under the holding of the Ohio Supreme Court in the *Forest Hills* case, respondents so-called 'available for use' charge is unreasonable and unlawful."

Those conclusions of the commission were based upon an erroneous reading of our holding in *Forest Hills.* There, we were reviewing an order of the commission, wherein it resolved a dispute over rates by imposing certain charges for actual use and another charge for availability for use. Paragraph ten of the syllabus in *Forest Hills* provides:

"The assessment by the Public Utilities Commission of an availability fee charged against nonusers of a water and sewer system utility, who are not connected to these systems but to whom such service is available, is unreasonable and unlawful."

In *Forest Hills,* we held that, since the commission had no statutory authority to impose an availability fee, the order imposing such a charge was unreasonable and unlawful. In the instant case, the commission was considering a water-availability charge which was part of a sales contract entered into between the parties. This charge was originally submitted as part of Mohawk Utilities' tariff which was filed with the commission in 1964. The difference between the commission imposing an availability charge, on its own authority, and in approving an availability charge which was agreed to in contracts between the parties, *is real.*

The instant case is distinguishable from *Ashtabula Gas Co. v. Pub. Util. Comm.* (1920), 102 Ohio St. 678, wherein we proscribed "readiness to serve charges" by a gas company utility. The syllabus states:

"Where a minimum charge for service to be rendered is made or prohibited by the ordinance under which a pub-

lic utility is operated, the utility is not authorized to make a readiness to serve charge to be paid in addition to the just and reasonable rate fixed for the rendering of the service."

The court, at page 683, described the "readiness to serve charge," as follows:

"* * * As to the 'readiness to serve charge,' while there is some difference in the statements of different experts and other authorities and reported cases, there is general agreement that the 'readiness to serve charge' has been understood to cover the cost incurred by the utility in holding itself in constant readiness to render the service without reference to the delivery of any of the commodity or the rendering of any of the service, it being understood that for the actual commodity or service rendered or used payment shall be made *by additional rate* schedule."

That case is factually different. In *Ashtabula,* the commission's order, which was challenged, required the users of gas to pay a charge for the readiness to serve, *and* a certain charge per thousand feet of gas used. In the instant case, the landowners were required to pay a water-use *or* a water-availability charge, for each lot. In *Ashtabula,* we held that the consumer could not be required to pay both.

Therefore, the decision of the commission that Mohawk Utilities' availability-for-use charges are per se contrary to law is unreasonable and unlawful.

Mohawk Utilities, in its second proposition of law, asserts that a contract providing for availability-for-use fees does not come within the jurisdiction of the commission because (1) the people who are to pay the availability fees, and who do not use water, are not "consumers" of a utility, within the meaning of R. C. 4905.03, and (2) neither party to the contract is a utility company.

It is difficult to understand those assertions, in view of the fact that, in the initial tariff Mohawk Utilities filed with the commission in 1964, it consented to the commission's jurisdiction of such charges when it listed, under the heading Rates and Charges, "water availability * * * per month $4.00."

We will, nevertheless, respond to the merits of those contentions, starting with the latter argument that neither

party to the contract is a utility company. The original contract for the purchase of a lot in the Lake Mohawk development was made between the individual purchasers and the developer, Lake Mohawk, Inc. In 1964, Mohawk Utilities took an assignment of the developer's contractual rights to availability charges. Mohawk Utilities then filed a utility tariff with the commission, listing the water-use and the water-availability charges. Since that time these charges have been collected by Mohawk Utilities.

The rights and obligations under the contracts involved herein are not removed from the jurisdiction of the commission merely because the utility company was not an original party to the contracts, but became involved as an assignee. We are interested in the obligations and rights arising from the transaction, not the form of the transaction. As we said in *State, ex rel. Kitchen,* v. *Christman* (1972), 31 Ohio St. 2d 64, 67:

"* * * this court examines this transaction, not for what it purports to be, but for what, in essence, it is. In short, this court looks through the form to the substance of the proposed transaction. 'To view the matter otherwise would exalt form over substance and impair the integrity of our constitutional government.' *State, ex rel. Nevada Building Authority,* v. *Hancock* (Nev. 1970), 468 P. 2d 333, 337. * * *"

In the instant case, it was the utility company, not the developer, that filed the utility tariff with the commission; it is the utility company which will provide the water service at the behest of the landowner, pursuant to the sales contracts;[1] and it is the utility company, the assignee, which provides, or is obligated to provide, the water service. The commission's jurisdiction over this operation is essential to protect the public interest.

---

[1] The contract restrictions provide, in pertinent part:

"The payments are to be computed on the basis of beginning with whichever month immediately follows availability of water service to said purchaser, whether or not an actual connection is made by the purchaser to the mains. The seller, or its assigns, upon receiving a written request from purchaser, and one hundred ninety five dollars ($195), will install a water connection from the main to the purchaser's lot line."

Mohawk Utilities' argument, that those landowners who pay availability-charges are not "consumers" because they merely have a contract for water service use, and are not presently *users* of the water service, is without merit.

There is no question that Mohawk Utilities qualifies as a utility under R. C. 4905.03.[2] The utility, however, claims that complainants are not consumers.

The landowners involved herein stand in a relationship with the utility concerning water service. This relationship is a contractual one, wherein the utility is required to provide water service when requested to do so by a landowner. The contractual obligation to provide water service, as well as the actual delivery of the water service, directly affects the utility's ability to function as a utility, and, hence, are subject to the commission's jurisdiction, as provided in R. C. 4905.04.

We reiterate our expression in *Shopping Centers Assn.* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 1, 4: "In the public interest it is desirable that the operations of an Ohio public utility come within the jurisdiction of the Public Utilities Commission* * *." Finding no good reason to depart from that rule, we hold that a review of the water-availability charges is within the jurisdiction of the commission.

The order of the commission, as we found, is unreasonable and unlawful and must be reversed.

*Order reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.

---

[2]The Code defines a public utility in R. C. 4905.03 as:

"(8) A water-works company, when engaged in the business of supplying water through pipes or tubing, or in a similar manner, to consumers within this state;

"* * *

"(14) A sewage disposal system company, when engaged in the business of sewage disposal services through pipes or tubing, and treatment works, or in a similar manner, within this state."