MAKKAS, D.B.A. ILIAS' ITALIAN PLACE LOUNGE, APPELLEE AND
CROSS-APPELLANT, *v.* UNEMPLOYMENT COMPENSATION BOARD OF
REVIEW, APPELLANT AND CROSS-APPELLEE.

[Cite as Makkas *v.* Unemployment Comp. Bd. of Review
(1985), 18 Ohio St. 3d 349.]

(No. 84-1494—Decided July 31, 1985.)

*Jack C. Thomas,* for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Cheryl J. Newster, Jules R. Cohn, Dwight Tillery* and *Howard M. Sanders,* for appellant and cross-appellee.

*Per Curiam.* The issue before us necessitates an interpretation of R.C. 4141.24(F). For the following reasons we affirm the judgment of the court of appeals.

R.C. 4141.24(F) governs the allocation of unemployment compensation liabilities that attach to the purchaser from the sale of part or all of an enterprise. It states:

"If an employer transfers his business or otherwise reorganizes such business, the successor in interest shall assume the resources and liabilities of such employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under Chapter 4141 of the Revised Code. If an employer acquires substantially all of the assets in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in his trade or business substantially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, upon application to the administrator signed by the predecessor employer and the acquiring employer, the employer acquiring such enterprise is the successor in interest. In the case of a transfer of a portion of an employer's enterprise, only that part of the experience with unemployment compensation and payrolls that is directly attributable to the segregated and identifiable part shall be transferred and used in computing the contribution rate of the successor employer on the next computation date. The administrator by regulation may prescribe procedures for effecting transfers of experience as provided for in this section."

The statute is comprised of two sections. The first is applicable to an enterprise transferred *in toto.* As a consequence the purchaser assumes the resources and liabilities of the seller's account and attains the status of "successor in interest."

In the second section the purchaser acquires less than all the assets of an enterprise. In these circumstances the purchaser has the option to elect responsibility for only a portion of the liabilities which are directly attributable to the purchased portion of the enterprise. The basic prerequisite for this *pro rata* attribution of liability, as a general rule, is an application made to the administrator and signed by the buyer and seller ["predecessor employer and the acquiring employer"]. *In re Lord Baltimore Press, Inc.* (1965), 4 Ohio St. 2d 68 [33 O.O.2d 436].

It is undisputed that at the time appellee obtained the third business it was the only remaining asset of FCI. Arrearages, however, were owed by FCI for *all three* businesses.

Appellee argues that because he owns a clearly segregable portion of FCI's original enterprise, yet did not elect to apply to the administrator for successor-in-interest status, no liability should accrue to him. The flaw with this reasoning is that at the time of the sale FCI's *only* business was the business acquired by appellee. Under these circumstances, adopting appellee's rule would encourage expungement of unemployment compensation liabilities, merely by clever intercorporate manipulations. In addition such a rule would also discourage purchasers from properly determining the liabilities of these predecessors.

In contrast appellant seeks to hold appellee the successor in interest for the unemployment compensation liabilities of all three businesses previously owned by FCI. While appellant's approach has the appeal of simplicity in application it would also serve to diminish any incentive for timely enforcement of unemployment compensation obligations. Moreover, not only would a hardship be placed upon appellee but the first two purchasers, who but for the caprices of fortune might now be in appellee's predicament, and FCI, would be given a windfall.

R.C. 1.47 stipulates a statute is presumed to be effective, feasible of execution, and designed to achieve a just and reasonable result. It should be readily apparent that the two positions heretofore offered to analyze application of R.C. 4141.24(F) do not conform with the dictates of R.C. 1.47. Accordingly we are compelled to adopt a third position.

We adopt this position because the statute is entirely unclear as to who is responsible for unemployment liabilities if the seller and purchaser do not elect to make application to the administrator pursuant to the second section. It is, however, apparent that "successor in interest" status is ordinarily presumed more desirable to an ongoing purchased business than is the loss of same. As we noted in *Lord Baltimore Press, Inc., supra,* at 73:

"This method of succession [the second portion of the statute] is designed to allow a successor employer to obtain the merit rate of unemployment contribution earned by the predecessor employer if the three elements set forth are rigidly adhered to."

It is also evident, based upon the amendment of the original antecedent to R.C. 4141.24(F) which created the second portion of the statute, that the legislature sought to expand the narrow allowance of successor-in-interest status. See *id.* at 72.

Legislative recognition of situations where only a segregable and identifiable portion of an enterprise is transferred — the substance of the instant transfer — must be reconciled with the form of the instant transaction which concededly amounted to a total transfer of assets remaining to FCI.[1] Thus while we are compelled to enforce the express first provision of

---

[1] Time and again in a wide range of contexts, this court has steadfastly refused to exalt form over substance. We specifically noted in *State, ex rel. Kitchen,* v. *Christman* (1972), 31 Ohio St. 2d 64 [60 O.O.2d 42]:

"At the outset, it should be emphasized that this court examines this transaction, not for

the statute with respect to total transfers we must temper our decision in view of legislative intention. Under the first section, appellee would normally be compelled to accept all liabilities as successor in interest. Under the second section, FCI, by failing to comply with the procedural dictate of the statute, would be forced to accept the total liability.

Accordingly, we recognize both the form and the substance of the facts before us, as did the court of appeals, by holding appellee liable only to the extent of liability attributable to his segregable and identifiable portion of the enterprise.[2]

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

LOCHER, HOLMES, C. BROWN and WRIGHT, JJ., concur.

WRIGHT, J., concurs separately.

CELEBREZZE, C.J., DAHLING and DOUGLAS, JJ., dissent.

DAHLING and DOUGLAS, JJ., dissent separately.

DAHLING, J., of the Eleventh Appellate District, sitting for SWEENEY, J.

WRIGHT, J., concurring. I write separately to voice my strong approval of the posture adopted by the court of appeals below. That court held that:

"Because appellee did not apply for status as a successor in interest, he cannot be assigned that status under the third method, and to the extent that the trial court may have ordered an apportionment under the third method, it was error to do so. Appellee cannot be a successor in interest as to the entire resources and liabilities of the corporation's account, pursuant to the first method, as appellee did not purchase the whole

---

what it purports to be, but for what, in essence, it is. In short, this court looks through the form to the substance of the proposed transaction." *Id.* at 67. See, also, *Loveman* v. *Hamilton* (1981), 66 Ohio St. 2d 183, 184 [20 O.O.3d 194]; *State* v. *Pearson* (1980), 62 Ohio St. 2d 291, 293 [16 O.O.3d 332]; *State* v. *Billups* (1979), 57 Ohio St. 2d 31, 39 [11 O.O.3d 150]; *State, ex rel. Special Prosecutors,* v. *Judges* (1978), 55 Ohio St. 2d 94, 95 [9 O.O.3d 88]; *Mohawk Utilities* v. *Pub. Util. Comm.* (1974), 37 Ohio St. 2d 47, 51 [66 O.O.2d 128]; *Moriarty* v. *Westgate Center, Inc.* (1961), 172 Ohio St. 402, 410 [16 O.O.2d 252].

[2] Needless to say we would strongly encourage the legislature to clarify the statute to avoid future difficulties of this kind.

of the corporation's business. Instead, he acquired the transfer of all the assets of the individual business he purchased. Therefore, as to the portion of the resources and liabilities of the account attributable to the business only, he is a successor in interest under the first method."

This result is certainly justified pursuant to R.C. 4141.24(F) as it is applied to the facts of this case. It is undisputed that appellee purchased a segregated and identifiable portion of the assets of the predecessor corporation. This transfer amounted to only one-third of the total assets of the predecessor. Moreover, it is uncontested that the remaining two-thirds of the predecessor's assets, in the form of two distinct businesses, were sold at different points in time to separate parties operating these businesses as separate ventures at separate geographical locations.

These considerations militate the final conclusion reached by the majority. In enacting R.C. 4141.24(F), the legislature never intended to saddle a business entity such as that purchased by appellee with the unemployment compensation tax liability of two other entirely distinct, independent, and unrelated business ventures.

Therefore, the court of appeals' application of R.C. 4141.24(F) and the concomitant allocation of tax liability are both reasonable and correct. Appellee did not purchase the whole of the predecessor corporation's business. Appellee acquired only that portion of the assets and liabilities attributable to the individual business he actually purchased. Thus, he is a successor in interest, under the first method articulated in R.C. 4141.24(F), only as to those separate assets and liabilities. To interpret this legislative mandate in any other fashion would do violence to both common sense and fair-minded treatment of the taxpayer.

DAHLING, J., dissenting. In my view, the appellee was a successor in interest to Famouse Coney Island, Inc. ("FCI"), and was therefore liable for the delinquent unemployment compensation taxes accrued by its predecessor in interest, FCI.

There are two methods of determining successor interest within R.C. 4141.24(F). The first method applies where there is a transfer of all the assets of the corporation's whole business. Under the second method, which provides for partial successorship, the following three requirements must be met: (1) a successor must acquire a clearly segregable and identifiable portion of an employer's enterprise; (2) a successor must, promptly after acquiring such assets, employ substantially the same individuals who were employed in the separate unit of the employer's enterprise immediately prior to the acquisition; and (3) an application for status as a successor in interest must be filed by both predecessor and successor.

The appellee, Ilias Makkas, maintains at the outset, that he is not a successor in interest to FCI under the statute in issue in any event. Appellee submits that he cannot be deemed as a successor under the second method of apportionment, since neither he nor FCI applied for such a

status as required under the above unemployment compensation tax statute. Likewise, appellee argues he cannot be found to be a successor under the first method outlined in R.C. 4141.24(F) because he will be forced to assume the liabilities of the entire predecessor corporation where the assets and liabilities he purchased from it were clearly identifiable and segregable.

Appellant, board of review, contends that its prior determination of appellee as a successor in interest under the first method outlined in the statute should be reinstated. The appellant argues that if appellee is held not to be a successor to FCI, then the integrity of the Unemployment Compensation Fund would be threatened since the state would have no recourse in collecting delinquent taxes. As to the second method, the appellee simply did not meet the requirements of the statute. R.C. 4141.24 (F) states in part:

"* * * If an employer acquires substantially all of the assets in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in his trade or business substantially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, upon application to the administrator signed by the predecessor employer and the acquiring employer, the employer acquiring such enterprise is the successor in interest. In the case of a transfer of a portion of an employer's enterprise, only that part of the experience with unemployment compensation and payrolls that is directly attributable to the segregated and identifiable part shall be transferred and used in computing the contribution rate of the successor employer on the next computation date. * * *"

Appellant submits that placing the burden of the liability for the predecessor's account on the transferee is not unreasonable, and that the rule of *caveat emptor* should apply in corporate transfers. Appellant also points out that R.C. 4141.24(F) is not intended to burden successors since, in the instant case, appellee will assume the favorable, established contribution rate of FCI.

Although *Apex Smelting Co.* v. *Cornell* (1955), 164 Ohio St. 369 [58 O.O. 153], was rendered under a prior succession statute, I believe its reasoning survives today and should be applied herein. As the court stated in that case at 371-372:

"* * * [I]t is apparent that, if, after the sale of its Grant Avenue plant to Apex and before the completion of its liquidation, National had transferred *all* its remaining assets and *all* its activities to a newly organized corporation, there would have been a 'transfer' of its 'business' by National as an 'employer,' and the transferee corporation would be the 'successor in interest' of National within the meaning of * * * the * * * statute."

In my view, the court of appeals' judgment should be reversed, and the

decision of the board of review finding appellee to be a successor in interest under the first method outlined in R.C. 4141.24(F) should be reinstated.

DOUGLAS, J., dissenting. I agree with the majority that this case involves an interpretation of R.C. 4141.24(F) and that the statute is composed of two sections. But I emphatically disagree with the court's decision to cast aside the plain meaning of the statute and to replace it with a rule it deems more reasonable.

The second section of R.C. 4141.24(F) reads in part:

"* * * If an employer acquires substantially all of the assets in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in his trade or business substantially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, *upon application to the administrator signed by the predecessor employer and the acquiring employer,* the employer acquiring such enterprise is the successor in interest. * * *" (Emphasis added.)

Resort to this section of the statute is triggered by an "* * * application to the administrator signed by the predecessor employer and the acquiring employer * * *." Since no such application was made, this section is not germane to our decision.

The first section of R.C. 4141.24(F) reads:

"If an employer transfers his business or otherwise reorganizes such business, the successor in interest shall assume the resources and liabilities of such employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under Chapter 4141 of the Revised Code."

This is the portion of the statute relevant to our determination of this case. Famouse Coney Island, Inc. ("FCI") was an Ohio corporation that operated *one business at three separate locations.* The business maintained one account with the Ohio Bureau of Employment Services. The assets at two of the three locations were sold, but the business continued to operate at the remaining location, and continued to maintain its account with the bureau.

On February 1, 1980, appellee, Ilias Makkas, d.b.a. Ilias' Italian Place Lounge, purchased FCI's assets and, for practical purposes, took over the operation of FCI. This caused appellee to become FCI's successor in interest, and required appellee to "* * * assume the resources and liabilities of such employer's [FCI's] account * * *." Therefore, pursuant to the plain meaning of the first section of R.C. 4141.24(F), appellee is now liable for FCI's delinquent unemployment compensation taxes and the decision of the Unemployment Compensation Board of Review should be reinstated.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.