[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 371.]

FIRSTENERGY CORPORATION ET AL., APPELLANTS, *v*. PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

[Cite as *FirstEnergy Corp. v. Pub. Util. Comm.*, 2002-Ohio-4847.]

*Public utilities—Electric companies—Public Utilities Commission's order*
*eliminating restrictions on electricity resale and distribution by landlords*
*to their tenants affirmed.*

(No. 2001-0923—Submitted April 23, 2002—Decided October 2, 2002.)

APPEAL from the Public Utilities Commission of Ohio, Nos. 99-1212-EL-ETP,
99-1213-EL-ATA, and 99-1214-EL-AAM.

————————————

PFEIFER, J.

{¶ 1} In 1999 Am.Sub.S.B. No. 3 ("S.B. 3"), the General Assembly adopted a comprehensive statutory scheme to facilitate and encourage competition in Ohio's retail electric market. The provisions of S.B. 3 relevant to this decision are contained in newly enacted R.C. Chapter 4928. R.C. 4928.31 requires each electric utility that supplies retail electric service to file with the appellee, Public Utilities Commission of Ohio ("PUCO" or "commission"), a transition plan for providing competitive electric service in Ohio.

{¶ 2} In December 1999, appellant FirstEnergy Corporation, on behalf of its Ohio operating companies (appellants Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company), filed its proposed transition plan with the commission. Stipulated settlement agreements were entered into between a majority of the parties to the commission proceedings, and evidentiary hearings and local public hearings were held. These proceedings resulted in an opinion and order, dated July 19, 2000, in which the commission approved the settlement agreements and FirstEnergy's transition plan, as modified

by the settlement agreements, subject to final approval of FirstEnergy's compliance tariffs to be filed pursuant to the order.

{¶ 3} In its entry dated November 21, 2000, the commission found that FirstEnergy had submitted proposed compliance tariffs as the commission had directed in its July 19, 2000 order and the commission approved those submissions, with certain exceptions. One exception related to restrictions on electricity resale and redistribution by landlords to their tenants. The commission's staff recommended that the proposed tariffs be modified to eliminate the restrictions on resale so that the tariffs would be consistent with the commission's decision in *Brooks v. Toledo Edison Co.*, commission case No. 94-1987-EL-CSS, 1996 WL 331201, decided May 8, 1996. The commission acknowledged that it had indicated in an earlier entry that the resale and redistribution issue would be addressed in the context of FirstEnergy's application for approval of its proposed compliance tariffs. The commission adopted its staff's recommendation for tariff modification on an interim basis, pending further review of the issue. In furtherance of such review, the commission solicited comments from interested parties regarding electricity resale and the effect of S.B. 3 on the *Brooks* decision.

{¶ 4} The commission received numerous comments, some favoring the commission's policy as set forth in *Brooks,* and others urging change. After considering the comments, the commission reaffirmed the *Brooks* decision, which it described in its January 18, 2001 entry as follows:

{¶ 5} "The *Brooks* decision held that [the electric utility] could not restrict the resale or redistribution of electric service by a landlord to a tenant if the resale or redistribution takes place only upon property owned by the landlord, and if the landlord was not operating as a public utility."

{¶ 6} Given this affirmation of *Brooks*, the commission ordered that FirstEnergy's resale tariff provisions would remain in effect, as modified by its earlier entry. The commission's refusal to approve the unmodified tariff provisions

2

as tendered by FirstEnergy forms the gravamen of FirstEnergy's complaint in this appeal.

{¶ 7} The cause is now before this court upon an appeal as of right.

I

{¶ 8} FirstEnergy argues that the commission erred in holding *Brooks* to be controlling because S.B. 3 was enacted after the *Brooks* decision. FirstEnergy also argues that S.B. 3 entitles consumers of retail electric service to choose their suppliers.

{¶ 9} FirstEnergy asserts that tenants of apartment houses, office buildings, and shopping centers are the ultimate consumers and fall within the purview of S.B. 3. However, this court has held that office buildings, apartment houses, and shopping centers are "consumers" of electricity even though these consumers may resell, redistribute, or submeter part of the electric energy to their tenants. *Jonas v. Swetland Co.* (1928), 119 Ohio St. 12, 162 N.E. 45; *Shopping Centers Assn. v. Pub. Util. Comm.* (1965), 3 Ohio St.2d 1, 32 O.O.2d 1, 208 N.E.2d 923. S.B. 3 did not change the law governing the resale or redistribution of electric service by a landlord to its tenants, and nothing in S.B. 3 overrules *Jonas*, *Shopping Centers Assn.*, or the commission's decision in *Brooks* (which relied on *Shopping Centers Assn.*).

{¶ 10} FirstEnergy further argues that S.B. 3 entitles tenants to choose their own service supplier and that the commission's decision enables landlords to prevent tenants from doing so. To the contrary, the commission's decision simply affirmed the right of landlords and tenants to enter into lease agreements that appoint the landlord to secure, resell, and redistribute electric service to its tenants. Under such leases, agreed to by tenants, the tenants exercise choice by appointing their landlord to make decisions and arrangements concerning electric utility service.

{¶ 11} For the foregoing reasons, we find that FirstEnergy's S.B. 3 arguments are without merit.

II

{¶ 12} FirstEnergy argues that the commission's approval of the stipulated settlement agreements, in its July 19, 2000 opinion and order, was tantamount to approval of the compliance tariff provisions submitted by FirstEnergy.

{¶ 13} FirstEnergy asserts that (1) it filed, as part of its proposed transition plan, tariffs that contained resale restrictions of the sort contained in its proposed compliance tariffs, (2) the settlement agreements concerning the proposed transition plan did not address the restrictive tariff provisions, and (3) the parties' failure to expressly address the issue of the restrictive tariff provisions in the settlement agreements meant that they were implicitly approved. Relying on these assertions, FirstEnergy concludes that the commission's approval of the settlement agreements in its July 19, 2000 order constituted binding prior approval of tariff provisions containing resale restrictions.

{¶ 14} FirstEnergy's argument is flawed. If, as FirstEnergy claims, the settlement agreements were in fact silent as to the questioned tariff provisions, that silence may signify little more than the parties' lack of concern with tariff issues at the stage of proceedings involving approval of the settlement agreements. The commission's July 19, 2000 order makes it clear that both the parties and the commission would consider the content and the compliance of the tariffs in further proceedings involving an application for tariff approval not yet filed. Further, the commission's statement that the settlement agreements were approved "subject to final approval of FirstEnergy's compliance tariffs" demonstrates that it did not accept the proposed restrictive tariff provisions in the settlement agreements. Moreover, in a later entry, the commission stated, "In our September 13, 2000 entry on rehearing in this proceeding, we indicated that this resale/redistribution issue *

4

* * would be addressed in the context of FirstEnergy's compliance tariff application."

**{¶ 15}** FirstEnergy has failed to convince us that the commission's conditional approval of the parties' stipulated settlement agreements in its July 19, 2000 order constrained the commission to approve without modification FirstEnergy's tariff provisions containing restrictions on electric resale and redistribution.

### III

**{¶ 16}** Decisions of the commission "shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable." R.C. 4903.13. "Under the 'unlawful or unreasonable' standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty." *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777. See *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371.

**{¶ 17}** To the extent that this appeal turns on questions of fact, we find that sufficient probative evidence was adduced before the commission to show that its determinations were just and reasonable and not manifestly against the weight of the evidence. Nor were they so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty.

**{¶ 18}** To the extent that this appeal turns on questions of law, as it largely does, we find that the commission correctly determined and applied the relevant law to the facts before it.

**{¶ 19}** We therefore affirm the commission's order.

Order affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, DeGENARO and LUNDBERG STRATTON, JJ., concur.

MARY DeGENARO, J., of the Seventh Appellate District, sitting for COOK, J.

_____

Arthur E. Korkosz; Jones, Day, Reavis & Pogue, Paul T. Ruxin and Helen L. Liebman, for appellants.

Betty D. Montgomery, Attorney General, Duane W. Luckey, William L. Wright and Thomas G. Lindgren, Assistant Attorneys General, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., M. Howard Petricoff and Jason J. Kelroy, urging affirmance for amicus curiae Enron Energy Services, Inc.

Vorys, Sater, Seymour & Pease, L.L.P., and Jason J. Kelroy, urging affirmance for amicus curiae Ohio Building Owners and Managers Association.

Bell, Royer & Sanders Co., L.P.A., and Barth E. Royer, urging affirmance for amicus curiae Simon Property Group, Inc.

_____