PLEDGER; SLIWINSKI, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as *Pledger v. Pub. Util. Comm.,*
109 Ohio St.3d 463, 2006-Ohio-2989.]

(No. 2005–0105—Submitted December 13, 2005—Decided June 28, 2006.)

ALICE ROBIE RESNICK, J.

## Background

{¶ 1} Capital Properties Management, Inc. ("CPM") owns and manages an apartment complex known as Hunt Club Apartments located in Copley, Ohio. Tobi Pledger and Mary Sliwinski were tenants of apartment units at Hunt Club Apartments.

{¶ 2} In January 2004, CPM began charging tenants for water metered at their apartment units. The ultimate source of the water was the city of Akron Water Department. CPM billed individual tenants for water based on Akron's water rate, plus an administrative charge of ten percent.

{¶ 3} Also in January 2004, CPM began billing individual tenants for sewer service based on water use at each apartment unit at the rate charged by the

ultimate provider of that service, the Summit County Department of Environmental Services, plus ten percent.

{¶ 4} On July 1, 2004, Pledger and Sliwinski[1] filed a complaint with the Public Utilities Commission ("PUCO") against their landlord, asserting that CPM was a public utility subject to the PUCO's jurisdiction and seeking, among other things, relief from CPM's administrative charges.

{¶ 5} On July 13, 2004, CPM filed its answer denying all material allegations of the complaint and raising affirmative defenses, including the defense that the PUCO lacked jurisdiction because CPM is not a public utility and does not provide public-utility service. CPM alleged that it was not a public utility pursuant to the criteria established by the commission in *In re Complaints of Inscho v. Shroyer's Mobile Homes*, PUCO case Nos. 90–182–WS–CSS, 90–252–WS–CSS, and 90–350–WS–CSS, 1992 WL 937210 (Feb. 27, 1992). CPM also asserted that it has never filed an application with the PUCO for a certificate of public convenience and necessity.

{¶ 6} On August 16, 2004, the PUCO's attorney examiner issued an entry concluding that CPM's assertion of the affirmative defense of lack of subject-matter jurisdiction would be treated as a motion to dismiss predicated on the three-part test delineated in *Shroyer*, and ordering the parties to brief whether the complaint should be dismissed.

{¶ 7} On October 6, 2004, the PUCO applied the *Shroyer* test and concluded that CPM is not a public utility and does not render public-utility services. Accordingly, the PUCO determined that it lacked jurisdiction in the matter and dismissed the complaint.

{¶ 8} Appellant then filed a motion for rehearing, which was denied by the PUCO in its entry on rehearing dated November 23, 2004. From that denial, appellant filed this appeal as of right.

## Central Issue

{¶ 9} The central issue in this appeal is a question of law: For purposes of determining the PUCO's jurisdiction under R.C. 4905.04(A),[2] is CPM a "waterworks company" or a "sewage disposal system company" as defined in R.C. 4905.03(A)(8) and (14), and, thus, a public utility under R.C. 4905.02?[3]

---

1. Pledger's request to be removed as a complainant was granted by the PUCO in its order of October 6, 2004, leaving Sliwinski as the sole complainant and appellant herein.

2. R.C. 4905.04(A) provides, "The public utilities commission is hereby vested with the power and jurisdiction to supervise and regulate public utilities * * *."

3. R.C. 4905.02 provides, "As used in this chapter, 'public utility' includes every corporation company, copartnership, person, or association, their lessees, trustees, or receivers, defined in

{¶ 10} R.C. 4905.03 provides:

{¶ 11} "As used in this chapter:

{¶ 12} "(A) Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, is:

{¶ 13} " * * *

{¶ 14} "(8) A water-works company, when engaged in the business of supplying water through pipes or tubing, or in a similar manner, to consumers within this state;

{¶ 15} " * * *

{¶ 16} "(14) A sewage disposal system company, when engaged in the business of sewage disposal services through pipes or tubing, and treatment works, or in a similar manner, within this state."

{¶ 17} Appellant claims that because CPM provides water and sewer services to its tenants, it is a water-works company and a sewage-disposal-system company pursuant to the definitions of R.C. 4905.03(A)(8) and (14). The statutory definitions, however, are not self-applying[4] when considered in the context of a landlord-tenant relationship. Something more than the words of the statute is needed. The PUCO states that to assist in its determination of the jurisdiction question, it developed the *Shroyer* test and urges that the test is "entirely consistent with the well-established precedent of the Court, as a way to systematically implement the statutory definition."

{¶ 18} The *Shroyer* test involves three questions: (1) Has the landlord manifested an intent to be a public utility by availing itself of special benefits available to public utilities such as accepting a grant of a franchised territory, a certificate of public convenience and necessity, the use of eminent domain, or use of the public right of way for utility purposes? (2) Are the water services available to the general public rather than just to tenants? and (3) Is the provision of water services ancillary to the landlord's primary business?

{¶ 19} The facts of *Shroyer* are similar to the facts in this case. As in this case, the PUCO in *Shroyer* considered a complaint under R.C. 4905.26 brought by tenants (of pads, or lots, for manufactured homes) against their landlord, Shroyer's Mobile Homes ("Shroyer"). Shroyer was a manufactured-home park, with 125 to 128 lots, located in Delaware County, Ohio, outside the corporate limits of the city of Delaware. The city was the source of Shroyer's water supply.

---

section 4905.03 of the Revised Code * * *." The statute lists exceptions, but none is relevant to this case.

4. "Self-applying" means "requiring no more for interpretation than a familiarity with the ordinary meanings of words." Black's Law Dictionary (8th Ed.2004) 1390.

Shroyer had historically incorporated water costs into the rent it charged. But sometime before the complaint was filed, Shroyer installed meters and began charging tenants for water based on their usage. Shroyer received water service from the city at a commercial rate and charged its tenants at the city's higher residential rate.

{¶ 20} In *Shroyer* the tenants alleged that Shroyer was a public utility and that it had "unreasonably and unlawfully installed meters on their mobile homes, charged them for those meters, and charge[d] them for water on a usage basis as well as through the rent for the pad as specified in their leases." The PUCO found that the primary question presented was whether Shroyer was a water-works company as defined by R.C. 4905.03(A)(8) and therefore a public utility as defined by R.C. 4905.02.

{¶ 21} Given the similarities between the facts and legal questions in *Shroyer* and those in this case, it is not surprising that the PUCO applied the *Shroyer* test to determine whether it had jurisdiction in this case. The PUCO found that the tenant in this case had failed to demonstrate that any part of the three-part test was met.

{¶ 22} As to the first part, the PUCO found that the tenant failed to show that CPM had received from the PUCO a franchised territory or a certificate of convenience and necessity to provide water service. The PUCO also found that CPM did not manifest an intent to be a public utility by availing itself of special benefits available to public utilities, such as using eminent domain or using the public right of way in rendering water or sewer service.

{¶ 23} As to the second part of the *Shroyer* test, the PUCO found that CPM did not hold itself out as providing water and sewer services to the general public. Rather, CPM provided those services only to its tenants.

{¶ 24} As to the third part, the PUCO found that CPM's providing water and sewer services to its tenants was ancillary to its primary business of being a landlord.

{¶ 25} Based on the complaining tenant's failure to demonstrate that CPM met any part[5] of the *Shroyer* test, the PUCO determined that it lacked subject-matter jurisdiction and dismissed the tenant's complaint.[6] We agree with the

---

5. The complaining tenant asserted that there was a fourth part to the *Shroyer* test, that being whether the landlord's separate charge for water or sewer service was reasonable. The PUCO ruled in both *Shroyer* and this case that the PUCO can reach that question only after it determines that it has jurisdiction over the provider of the service, which, in both cases, the PUCO determined that it did not.

6. The PUCO remarked, "[A]s the case law teaches, '[w]hile we do not have jurisdiction in this case, Complainants may have a remedy in a court of competent jurisdiction.' *Shroyer* at 6."

PUCO's determination and hold that the dismissal of the complaint was reasonable and lawful.

## Significance of *Shroyer*

{¶ 26} In a construction of the statutes that is inconsistent with our earlier observation that R.C. 4905.03(A)(8) and (14) are not self-applying, appellant urges that to be a statutory water-works company or sewage-disposal-system company, appellant's landlord need only be " 'in the business' of supplying water or sewage disposal services." Appellant then argues that "in the business" simply means the "buying and selling of commodities and services," which CPM, as appellant's landlord, does with respect to water and sewer service. Accordingly, argues appellant, the third part of the *Shroyer* test should not be considered in making a jurisdictional determination.

{¶ 27} Appellant's argument ignores the fact that the noun "business" is followed in both statutory provisions by the preposition "of," which is used to introduce words describing the noun preceding it. A utility is not in the "business of" buying and selling an ordinary commodity or service. Instead, R.C. 4905.03(A)(8) refers to the "business of *supplying* water through pipes or tubing, or in a similar manner," and R.C. 4905.03(A)(14) refers to the "business of [*providing* ] sewage disposal services through pipes or tubing, and treatment works, or in a similar manner." (Emphasis added.)

{¶ 28} We cannot accept appellant's suggested definition of "business," which would mean that appellant's landlord, CPM, need only buy water and resell it to its tenants to become a water-works company and that CPM need only buy sewage-disposal services and resell them to its tenants to become a sewage-disposal-system company.

{¶ 29} Moreover, appellant complains that the PUCO's application of the third prong of the *Shroyer* test results in a requirement that for a landlord to be deemed a water-works company subject to the PUCO's jurisdiction, the landlord must be "primarily in the business of" supplying water.

{¶ 30} A close reading of the PUCO's October 6, 2004 dismissal entry, however, reveals that the PUCO did not say what appellant attributes to it. The PUCO did not say that only if the landlord were primarily in the business of supplying water would the landlord be a water-works company subject to PUCO jurisdiction. Rather, the PUCO found that CPM's primary business was that of being a landlord and to the extent that it provides water and sewer service to its tenants, the provision of those services "is ancillary to [CPM's] primary business of being a landlord."

{¶ 31} The PUCO did not interpret the phrase "in the business of supplying" to require CPM to be "primarily in the business of supplying," as claimed by

appellant. Thus, the PUCO did not unreasonably apply its *Shroyer* test, and *Shroyer* is relevant to this case.

## Landlord as Consumer

{¶ 32} R.C. 4905.03(A)(8) defines a water-works company to be a company "engaged in the business of supplying water * * * to consumers within this state." Thus, it is important that the "consumers" be identified in this appeal. The PUCO found CPM, the landlord, to be the consumer. Appellant contends that the PUCO's finding was wrong and that the consumer referred to in the statute is the complaining tenant, appellant.

{¶ 33} Appellant then cites and discusses two cases involving appeals to this court from PUCO decisions. The first, *Mohawk Util., Inc. v. Pub. Util. Comm.* (1974), 37 Ohio St.2d 47, 66 O.O.2d 128, 307 N.E.2d 261, dealt with the question of who was a "consumer" of water service, but it did not involve a landlord-tenant relationship. The second case, *Shopping Ctrs. Assn. v. Pub. Util. Comm.* (1965), 3 Ohio St.2d 1, 32 O.O.2d 1, 208 N.E.2d 923, did involve landlords and tenants, but it supports the commission's position that landlords and not their tenants are the consumers of public-utility services when the landlords resell and redistribute to their tenants the products supplied by the public utility.

{¶ 34} Appellant also refers to several statutory definitions of "consumer." However, each of these statutory definitions specifies that it is applicable to code sections that are not relevant here. The statutes appellant relies on are R.C. 1317.01(P) (retail installment sales), 1345.01(A) and (D) (consumer-sales practices), and 1345.71 (Ohio's Lemon Law).

{¶ 35} In summary, none of the authorities that appellant cites, whether dictionary definitions, case law, or statutory definitions, supports the assertion that in a landlord-tenant relationship, it is the tenant rather than the landlord who is the consumer of the commodity provided by a water-works utility.

{¶ 36} The PUCO's position that the landlord is the "consumer" under R.C. 4905.03(A)(8) is better reasoned and is supported by legal authority.

{¶ 37} Landlords are consumers of utility service, even though they resell that service to their tenants. In *FirstEnergy Corp. v. Pub. Util. Comm.*, 96 Ohio St.3d 371, 2002-Ohio-4847, 775 N.E.2d 485, this court held that the energy supplier was not allowed to restrict the resale of electric service by a landlord to a tenant if the resale took place only on the landlord's property. This court, citing precedent, held that "office buildings, apartment houses, and shopping centers are 'consumers' of electricity even though these consumers may resell, redistribute, or submeter part of the electrical energy to their tenants." Id. at ¶ 9.

{¶ 38} Applying *FirstEnergy* to the case at bar, we hold that the landlord is the consumer of these services, even though it resold the services to its tenants.

{¶ 39} A water-works company is a company "engaged in the business of supplying water through pipes or tubing, or in a similar manner, to consumers within this state." R.C. 4905.03(A)(8). The landlord in this case is a consumer of utility services. The landlord consumes utility services in the process of engaging in its business of renting apartment space. Since the landlord is not the supplier of water to consumers, it is not a water-works company and therefore not a public utility subject to the commission's jurisdiction.

## Conclusion

{¶ 40} As this court has held in the past, " '[d]ue deference should be given to statutory interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility.' " *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 30, quoting *Weiss v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17–18, 734 N.E.2d 775. Pursuant to R.C. 4903.13, we will not reverse or modify a final order of the PUCO unless the "court is of the opinion that such order was unlawful or unreasonable." We hold that the PUCO's decisions in this case were reasonable and lawful, and, therefore, we affirm them.

Orders affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

John Wood, for appellant.

Jim Petro, Attorney General, and Duane W. Luckey, John H. Jones, and Thomas W. McNamee, Assistant Attorneys General, for appellee Public Utilities Commission.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., and Orla E. Collier III, for appellee Capital Properties Management, Inc.