**624**

A. COPELAND ENTERPRISES, INC. d/b/a/ Popeye's Famous Fried Chicken, Appellee,

v.

COMMISSIONER OF REVENUE of the State of Tennessee, Appellant.

Supreme Court of Tennessee, at Jackson.

Jan. 27, 1986.

Charles L. Lewis, Deputy Atty. Gen., Nashville, (W.J. Michael Cody, Atty. Gen. & Reporter, of counsel), for appellant.

Thomas D. Yeaglin, Memphis, for appellee.

OPINION

FONES, Justice.

The issue in this State revenue case is whether plaintiff was a successor in business of Coyote Properties, Inc., within the meaning of T.C.A. § 67–6–513 and as such liable for the unpaid sales taxes that accrued during the time that Coyote Properties operated the business.

The Commissioner determined that Coyote Properties had a delinquent sales tax liability of $20,095.46 and assessed that amount to Copeland Enterprises as successor to Coyote. Copeland paid that amount under protest and filed this suit for a refund of Coyote's tax liability. Both parties moved for summary judgment as there were no disputed facts. The trial judge denied the Commissioner's motion, granted plaintiff's motion, and entered a decree in favor of the taxpayer. The relevant facts in determining successor liability under T.C.A. § 67–6–513 are indistinguishable from *Bank of Commerce v. Woods,* 585 S.W.2d 577 (Tenn.1979), which requires that we reverse the trial court.

A wholly owned subsidiary corporation of plaintiff was the owner and franchisor of franchises known as Popeye's Famous Fried Chicken. Plaintiff developed six locations in the Memphis area that were operated by Coyote Properties, Inc., an Arkansas corporation. Plaintiff as lessee of the six locations sublet to Coyote and sold the equipment in the six locations to Coyote for $115,000, payable in monthly installments secured by a chattel mortgage dated January 25, 1980. The franchise was held by another Arkansas corporation in which the principal stockholder of Coyote had an interest. Coyote operated the restaurants in Tennessee under a management agreement between the two Arkansas corporations. Plaintiff operated the restaurants for a period of time prior to the transactions that resulted in Coyote taking over, at which time there was an inventory on hand

and Coyote paid plaintiff $25,000 for that inventory.

Mr. McCranie, an officer of the plaintiff corporation, testified that everything went well for the first year and then Coyote became delinquent on payments on the leases, the equipment and the franchises. After many meetings about what to do, Buford B. Wiley, Jr., president of Coyote, told plaintiff, "Look, I am not paying you. I can't pay you. What do you want to do?" McCranie testified that plaintiff offered to cancel the debt in return for a transfer of the equipment and a cancellation of the subleases, which offer was accepted by Wiley. A document was prepared at that time, October 29, 1981, and executed by Wiley as president of Coyote Properties, Inc., and individually; but plaintiff did not execute the instrument until March 1982. McCranie said that Mr. Copeland did not want to operate the stores at that time, but in March 1982 a corporate decision was made to execute the agreement and take over the operation. After notifying Wiley, who again approved, plaintiff executed the agreement and took over the operation of the stores. McCranie said the corporation had information that a bankruptcy proceeding was likely and did not want the properties tied up in a bankrupt estate.

The document executed by Wiley in October 1981 and by plaintiff in March 1982, was entitled a Daiton En Paiement, which is the name of an instrument used when property is surrendered to the creditor in exchange for the cancellation of the debt under Louisiana law. Although Coyote's interests in the leases, the management contract, and indirectly the franchises were terminated, the record is silent as to how those cancellations were accomplished. The record is also silent as to whether Coyote had any inventory on hand in March of 1982 at the time of plaintiff's take-over.

Plaintiff takes the position that the only transaction it had with Coyote was the Daiton En Paiement and insists that since no "purchase money" was paid by plaintiff none could be withheld as contemplated by the statute and, therefore, plaintiff was not a successor of Coyote's sales tax liability.

That was the contention of the plaintiff taxpayer in *Bank of Commerce v. Woods, supra.* There the bank had a security interest in all of the inventory, furniture, equipment and fixtures in a convenience food store. The owners and operators of the food store became delinquent in their payments on the bank loan and executed a bill of sale conveying their entire interest in the store to the bank in consideration of the bank's cancellation of the balance due on their indebtedness. The bank operated the business until they found a buyer. A bank officer testified they wanted to avoid a foreclosure and to maintain the continuity of the business as a going concern. The fact that all of the assets of the food business were transferred to the bank in a document called a Bill of Sale does not distinguish that transaction from the transaction in the instant case between plaintiff and Coyote.

Plaintiff controlled the leasehold estates and the corporation from whom Coyote acquired the franchises and plaintiff stepped into the shoes of Coyote and took over the operation of the restaurants in March 1982. The fact that the details of the sublease surrender, the termination of Coyote's franchise rights and any inventory Coyote may have had are not shown in the record is of no significance. It is undisputed that plaintiff assumed the operation of the restaurants without any interruption of the business. Thus, the result was the same as in *Bank of Commerce v. Woods, supra,* a successor took over the assets and continued the business as a going concern.

Nor do we find any significance to the fact that Coyote may still owe plaintiff a substantial sum of money, eliminating any possibility that the assets acquired by plaintiff from Coyote exceed the debt cancelled, as a substitute for purchase money. We have heretofore held that the legislative purpose in enacting the successor statute, T.C.A. § 67–6–513, was to provide that the tax debt follow the business, its assets or any portion thereof to insure the collecti-

bility of sales taxes due the State. *Bank of Commerce v. Woods, supra* at 580. It is not incumbent upon the commissioner to show that purchase money or an equity in excess of a cancelled indebtedness, passed to the successor as a pre-requisite of imposing successor liability under the statute.

The decree of the Circuit Court of Shelby County is reversed and plaintiff's suit is dismissed. Costs are adjudged against plaintiff.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.