THE STATE OF OHIO, APPELLANT, *v.* THE STANDARD OIL COMPANY ET AL., APPELLEE.

[Cite as State v. Standard Oil Co. (1974), 39 Ohio St. 2d 41.]

42

(No. 73-67—Decided July 3, 1974.)

*Mr. William J. Brown,* attorney general, *Mr. Thomas E. Heydinger* and *Mr. Norman P. Solz,* for appellant and cross-appellee.

*Messrs. Squire, Sanders & Dempsey, Mr. James A. Smith, Mr. James P. Murphy* and *Mr. Isaac Schulz,* for appellee and cross-appellant.

O'NEILL, C. J.  The issue presented in these appeals is whether Standard Oil is liable under R. C. 5739.14 for the unpaid sales taxes accruing during the operation of the service station by Bleim.

R. C. 5739.14 provides:

"If any person liable for taxes levied by or pursuant to Sections 5739.01 to 5739.31, inclusive, of the Revised Code, sells his business or stock of merchandise, or quits his business, the taxes and interest or penalty imposed by or pursuant to such sections on sales made prior to that time shall become due and payable immediately, and such person shall make a final return within fifteen days after the date of selling or quitting business. His successor shall withhold a sufficient amount of the purchase money to cover the amount of such taxes, interest, and penalties due and unpaid until the former owner produces a receipt from the Tax Commissioner showing that the taxes, interest, and penalties have been paid, or a certificate indicating that no taxes are due. If the purchaser of the business or stock of goods fails to withhold purchase money, he shall be personally liable for the payment of the taxes, interest, and penalties accrued and unpaid during the operation of the business by the former owner."

The syllabus in *State* v. *Sloan* (1956), 164 Ohio St. 579, 132 N. E. 2d 460, reads:

"1. Section 5739.14, Revised Code, imposes a duty upon the purchaser of a business to determine * * * that either the seller owes no accrued sales taxes, or, if such taxes are owed, the amount thereof, and, if the latter, to withhold from the purchase price the amount owed until the seller produces a receipt from the Tax Commissioner showing that the taxes have been paid or a certificate indicating that no taxes are due.

"2. The purchaser of a business who fails to make such a determination and to withhold any amount owed becomes personally liable for the taxes accrued during the operation of the business by the seller * * *."

Since R. C. 5739.14 applies only where a sale of a "business or stock of merchandise" occurs, the disposition issue here is whether the transaction between Standard Oil and the station operator, whereby their business relationship was terminated and the inventory and merchandise were transferred to Standard Oil, constituted a sale.

It is the position of Standard Oil that the transaction by which it recovered the inventory and merchandise was a foreclosure and that "foreclosure of a defaulting debtor's property by a creditor holding a perfected security interest in such property does not constitute a 'sale' within the meaning of Section 5739.14, Revised Code."

The Court of Appeals, noting that Standard Oil, "in taking possession of the inventory and merchandise * * * elected to obtain an affidavit as required under the Ohio Uniform Commercial Code Section 1306.03, and * * * that * * * [Standard Oil] prepared the affidavit in which it stated specifically that a stock of merchandise and certain fixtures * * * was being purchased from the owner * * * and * * * that no such affidavit is required for a transfer in settlement or realization of a lien or other security interest * * * and * * * that * * * [Standard Oil] did not indicate in any way that it was proceeding under Section 1319.07, R. C., to foreclose any chattel mortgage * * *,"

concluded that "the trial court did not err in considering the transaction involved to be a sale rather than a foreclosure."

The Court of Appeals thus looked only to the form of the transaction by which Standard Oil took possession of the inventory and merchandise in determining that a sale had occurred.*

Consideration of the totality of the business dealings and contractual relationship between Standard Oil and the station operator, however, leads to the conclusion that the execution of the bulk transfer affidavit constituted, in effect, the exercise by Standard of its rights under the security agreement. The fact that Standard Oil "elected to obtain an affidavit under the Ohio Uniform Commercial Code Section 1306.03 * * * and * * * did not indicate in any way that it was proceeding * * * to foreclose any chattel mortgage" is not sufficient, in the opinion of this court, to transform the transaction from a foreclosure under a security agreement to a sale. The use by Standard Oil of an inappropriate form to enforce its rights under the security agreement did not alter the basic character of the contractual relationship between Standard Oil and the station operator and thereby convert a foreclosure into a sale.

Accordingly, the judgment of the Court of Appeals is reversed and final judgment is rendered for the appellee and cross-appellant, Standard Oil Company.

*Judgment reversed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

*It is appropriate to note here that it is the substance of the transaction between Standard Oil and the station operator rather than its form which is significant. "We are interested in the obligations and rights arising from the transaction, not the form of the transaction." *Mohawk Utilities* v. *Pub. Util. Comm.* (1974), 37 Ohio St. 2d 47, 51, 307 N. E. 2d 261. Thus, "* * * this court examines this transaction, not for what it purports to be, but for what, in essence, it is." *State, ex rel. Kitchen,* v. *Christman* (1972), 31 Ohio St. 2d 64, 67, 285 N. E. 2d 362.