**STONER CREEK STUD, INC., Appellant,**

v.

**REVENUE CABINET COMMON-WEALTH OF KENTUCKY, Appellee.**

No. 86-CA-2780-MR.

Court of Appeals of Kentucky.

Dec. 18, 1987.

Discretionary Review Denied By Supreme Court March 22, 1988.

Douglas P. Romaine, Jackson W. White, Stoll, Keenon & Park, Lexington, for appellant.

Celia M. Dunlap, Legal Services Section, Revenue Cabinet, Frankfort, for appellee.

Before COMBS, COOPER and WILHOIT, JJ.

WILHOIT, Judge.

This is an appeal from a judgment of the Franklin Circuit Court affirming an order of the Kentucky Board of Tax Appeals, which determined that sales and use taxes were properly assessed against the appellant by the Revenue Cabinet.

The appellant, Stoner Creek Stud, Inc., owns and operates a farm for raising and breeding horses. Following an audit of purchases made by Stoner Creek during the periods from February 2, 1979, to March 31, 1979, and June 1, 1979, to April 30, 1983, the Revenue Cabinet issued sales and use tax assessments totalling $42,-914.29. Stoner Creek filed a timely protest to the assessments with the Revenue Cabinet, contending that certain purchases were either exempt from tax or that it was not liable for taxes due.

The appellant claimed exemptions for its purchases of horse feed, tractors, and other machinery used on the farm, kerosene and other fuels used to power farm machinery, and catalogs for use in its horse breeding business. Stoner Creek also contended that sales tax on certain purchases made from various retailers in Kentucky was their liability rather than its own. Finally, Stoner Creek disputed a use tax assessed on a specially commissioned oil portrait of one of its champion stallions, arguing that the sale was for nontaxable professional services.

The Revenue Cabinet denied the appellant's formal protest but failed to specifically address the issue of Stoner Creek's purchases of petroleum fuels and catalogs. Stoner Creek then filed a petition for review before the Kentucky Board of Tax Appeals.

In its petition to the Board, Stoner Creek reiterated its objections to the sales and use taxes assessed by the Revenue Cabinet, but made no mention of the fuel and catalog purchases. These latter purchases

were also omitted from the parties' joint prehearing memorandum in which they set out their stipulations and delineated the issues to be decided by before the Board. Following settlement of several disputed assessments by the Revenue Cabinet and Stoner Creek, the Board upheld all of the remaining assessments against Stoner Creek. Stoner Creek then sought review in the circuit court which affirmed the Board. This appeal followed.

■ We first consider the appellant's contention that feed purchased by the taxpayer for use in its horse farming operations was exempt from Kentucky use and sales taxes pursuant to KRS 139.480(7), which provides that sales and use taxes shall not apply to "feed for livestock or poultry of a kind the products of which ordinarily constituted food for human consumption...." The appellant argues that horses are "livestock" and that its feed purchases are therefore exempt pursuant to the statute. When taken in the context of the entire statute, however, it seems clear that the words "human consumption" are intended to modify "livestock" as well as "poultry." Happily, the legendary esteem in which Kentuckians have always held horseflesh has never extended to the dinner table. The feed is not exempt by this statute.

■ The appellant further argues that its feed purchases should be exempted as "tangible personal property to be used in the manufacturing or industrial processing" of finished products for resale. *See* 103 KAR 30:130 § 1. Such "tangible personal property" is defined as "[m]aterials which enter into or become an ingredient or component part of the manufactured product." 103 KAR 30.130 § 2(1). Stoner Creek contends that "the breeding and raising of horses for sale is an 'industry,'" and that "the feed purchased by [Stoner Creek] to sustain its livestock constitute[s] the industrial materials of this industry." Suffice it to say that horses are bred and raised; they are not "manufactured" or "processed" as those words are commonly understood. This regulation clearly does not exempt feed for horses from sales or

use tax. It may be, as the appellant argues, that a sound public policy would provide an exemption in this instance. That argument is best addressed to others since our role is not to set public policy but to follow it.

The appellant also contends that its purchases of certain machinery and replacement and repair parts should be exempt from sales and use taxes as "farm machinery," under KRS 139.480(9). As used in that section of the statute, "farm machinery" means "machinery used *exclusively* and directly in the occupation of tilling the soil for the production of crops as a business, or in the occupation of raising and feeding livestock or poultry or of producing milk for sale...." Id. (emphasis added). The evidence showed that the machinery in question was used not only in the cultivation and production of tobacco but also in the appellant's regular horse farm activities. Whether it qualifies as "farm machinery" under this section, therefore, depends upon whether horses are "livestock."

The word "livestock" as used in subsections (4) and (7) of KRS 139.480 is qualified by language limiting its meaning to animals which ordinarily constitute food for human consumption. The word is not so limited in KRS 139.480(9). The taxpayer argues that failure to specifically limit the word in the latter section evinces a legislative intent to broaden the definition for purposes of classifying farm machinery. The Revenue Cabinet argues that because the legislature limited the term in the two previous sections of the statute, its intent was to retain the same definition throughout the statute.

■ In general, tax statutes must be strictly construed and all doubts or ambiguities resolved in favor of the taxpayer. *See George Wohrley, Inc. v. Commonwealth, Department of Revenue,* Ky., 495 S.W.2d 173, 175 (1973); *Department of Revenue v. Greyhound Corp.,* Ky., 321 S.W.2d 60, 61 (1959). In the case of statutes providing exemption from tax, however, the converse is true, and ambiguities must be construed strictly against the taxpayer. *See Delta Air Lines, Inc. v. Commonwealth, Reve-*

*nue Cabinet,* Ky., 689 S.W.2d 14, 18 (1985); *Banahan v. Presbyterian Housing Corp.,* Ky., 553 S.W.2d 48, 51 (1977). An exemption from tax will not be presumed or implied. *See George v. Scent,* Ky., 346 S.W. 2d 784, 789 (1961). Further, a reviewing court should adopt a construction which reconciles an ambiguity with other provisions of the law clearly expressed. *Id.* at 790. As the legislature has twice in KRS 139.480 specifically limited its definition of "livestock" to animals whose products ordinarily constitute food for human consumption, we believe that the legislature intended that the term be similarly interpreted throughout the same statute. As a result, we conclude that horses are not livestock under this section and that the machinery purchased by the taxpayer cannot be classified as "farm machinery."

■ Next, the appellant argues that its acquisition of an oil painting of one of its stallions constitutes a nontaxable sale of professional services and is not subject to a use tax as a transfer or sale of tangible personal property pursuant to KRS 139.-310. The appellant cites 103 KAR 26:010 § 1 which provides that persons engaged in the business of rendering services are not retailers of the tangible personal property which they use incidentally in rendering the service, and it compares the rendering of an original oil painting by the artist to the taking, development and printing of an original photograph, which constitutes a nontaxable sale of services pursuant to 103 KAR 27:120 § 1. That regulation is based upon the Revenue Cabinet's interpretation that the sale of an original photograph is primarily a sale of the photographer's professional services and is only incidentally a sale of the tangible personal property which comprises the finished work. The photographer is considered the consumer of the tangible property comprising the photographs.

We cannot say that these regulations are unreasonable as they interpret the statute. Nevertheless, if the sale of an original photograph by the photographer is deemed to be a sale of professional services, it would seem to follow by inexorable logic that the sale by the artist of an original painting commissioned by the buyer is also primarily a sale of professional services. Under the interpretation which the Cabinet itself has given to the statute, the sale of the oil painting was not subject to use tax.

■ We next consider the contention that purchases of hay from out-of-state vendors were subject to sales tax pursuant to KRS 139.200 and not a use tax pursuant to KRS 139.310. KRS 139.500(1) exempts from the use tax any property the gross receipts from the sale of which are required to be measured in the sales tax levied by KRS 139.200. KRS 139.200 imposes a sales tax on gross receipts derived from " 'retail sales' ... made within this commonwealth...." A "retail sale" is further defined as "[a] sale for any purpose other than resale in the regular course of business of tangible personal property." KRS 139.100(1)(a).

The sales in this case were of tangible personal property, were all made within this commonwealth, and were not for resale. It would seem at first glance that they would constitute retail sales subject to sales tax and not use tax. However, the Kentucky Supreme Court in *Genex/London, Inc. v. Kentucky Board of Tax Appeals,* Ky., 622 S.W.2d 499 (1981), held that where property which is the subject of a sale within this state has been brought into the state by the seller, the sale is subject to a use tax and not a sales tax. *Id.* at 506. Because we are unable to distinguish the facts in this case from the facts in *Genex/London, Inc.,* we must conclude that the Revenue Cabinet was correct in imposing a use tax on Stoner Creek's purchases of hay from an out-of-state vendor.

■ The appellant also maintains that the Revenue Cabinet impermissibly held it liable for sales taxes on sales of tangible personal property to it by seven Kentucky vendors. The Cabinet claimed that the appellant had given written certifications of exemption to the vendors. KRS 139.490 permits a seller to accept such a certificate from a purchaser in which event the purchaser becomes liable for any sales tax due on the transaction. The appellant denied

that it had given certificates of exemption to the vendors and its farm manager so testified before the Board. The only evidence produced by the Cabinet in this regard was the testimony of an auditor who stated that she had "called" the vendors in question and that they "indicated" to her that they had the certificates for these sales.

We believe that the testimony of the farm manager was sufficient to rebut the presumption that the tax assessments on these sales were valid, if such a presumption applies. *See Hahn v. Allphin,* Ky., 282 S.W.2d 824 (1955). The Cabinet then had the burden of going forward with evidence to show that the certificates had been given. The hearsay evidence which it produced even if admissible to show certificates were not given, was a far cry from "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Company,* Ky., 474 S.W.2d 367, 369 (1971). The declarants had good reason to assure their caller that they had certificates for, as she testified, she requested audits of those who told her they had no such certificates but not for those who said they did. The declarations made to the auditor were not made under circumstances in which they were likely to be accurate or trustworthy. *See Buckler v. Commonwealth,* Ky., 541 S.W.2d 935 (1976). The finding of the Board in this respect must be reversed because it is not based upon substantial evidence.

The appellant next contends that the Board of Tax Appeals erred in determining that the issue of whether certain purchases of motor fuels and catalogs were exempt from tax was not preserved for review by it. These issues were raised in the appellant's protest filed with the Revenue Cabinet, but were not raised in the appellant's petition before the Board. They also were not raised in the appellant's preconference memorandum in which it set out the issues it wished to be adjudicated before the Board. 802 KAR 1:010(2) at the time the appeal to the Board was taken required that the petition to the Board contain a brief statement of the law and facts in issue and the petitioner's position. In view of the failure to raise these issues in the petition or even the preconference memorandum, we cannot say that the Board abused its discretion in declining to address them.

Finally, Stoner Creek complains that the circuit court exceeded its scope of review by issuing written findings of fact and conclusions of law. The judgment of the circuit court indicates that it properly limited its scope of review to whether the legal conclusions of the Board were in conformity with the law and whether the Board's findings of fact were supported by substantial evidence. *See* KRS 131.370(3). The circuit court did not consider new factual issues on appeal, nor did it substitute its judgment for that of the Board. We therefore find no merit in the contention that the circuit court exceeded its scope of review in this case.

The judgment is reversed as to the imposition of use tax on the commission of the oil painting, and the imposition of sales tax on the appellant in those instances in which the evidence was insufficient to show exemption certificates had been given to the vendors. In all other respects the judgment is affirmed.

All concur.