**In re WESTERN RESOURCES, INC., Debtor.**

**Bankruptcy No. 88–01700–EV RA.**

United States Bankruptcy Court, S.D. Indiana, Evansville Division.

May 1, 1990.

Ronald J. Bamberger, for debtor.

Barbara Curtin Kenney, for Com. of Ky., Revenue Cabinet.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON OBJECTION TO CLAIM OF COMMONWEALTH OF KENTUCKY, REVENUE CABINET

MICHAEL H. KEARNS, Bankruptcy Judge.

Debtor, by counsel, filed on December 15, 1989 its Objection To The Amended And Substituted Preferred Claim For Taxes Due The Commonwealth Of Kentucky which was filed by the Kentucky Revenue Cabinet in the within cause, and on January 3, 1990, the Kentucky Revenue Cabinet filed its response thereto. Pursuant to proper notice dated January 11, 1990, a hearing was held on February 15, 1990 on the above matters.

As is set out in the Order of February 15, 1990, present at the hearing were debtor, by principal, Eugene Stallings, and by counsel, Ronald J. Bamberger; and the Commonwealth of Kentucky, Revenue Cabinet, by counsel, Barbara Kenney.

Witnesses were sworn, evidence was heard, and at the conclusion of the evidence, the parties rested and requested opportunity to file briefs. The briefing time having now expired and the briefs having been filed, the Court makes the following Findings of Facts, Conclusions of Law and Order.

## FINDINGS OF FACT

The debtor, Western Resources, Inc., an Illinois corporation, made periodic unsecured loans over a ten (10) year period of time to Apple Food and Vending Service, Inc., (hereinafter "Apple"), an Alabama corporation. These loans to Apple were not evidenced by promissory notes, and they total Four Hundred Forty-one Thousand Six Hundred Eighty-eight Dollars and Seventy-three Cents ($441,688.73). On October 12, 1988, the Board of Directors at Apple, by unanimous written consent, acknowledged owing the Four Hundred Forty-one Thousand Six Hundred Eighty-eight Dollars and Seventy-three Cent ($441,688.73) debt to Western Resources [Debtor's Exhibit 5], and pursuant to a Bill of

Sale and Assignment of Contract Rights of the same date, agreed to sell certain equipment, motor vehicles, contract rights and other assets having a fair market value of One Hundred Fifty-eight Thousand Seven Hundred Sixty Dollars ($158,760.00) to Western Resources [Debtor's Exhibit 4]. Western Resources, in exchange, reduced the debt owed by Apple to Western Resources by One Hundred Fifty-eight Thousand Seven Hundred Sixty Dollars ($158,-760.00). The remaining amount due, Two Hundred Eighty-two Thousand Nine Hundred Twenty-eight Dollars and Seventy-three Cents ($282,928.73) was then evidenced by Apple's execution of a demand promissory note to Western Resources bearing interest at a rate of ten percent (10%) per annum from July 1, 1988, the date the sale was to be effective. [Debtor's Exhibit 6].

All of the above assets transferred by the Bill of Sale from Apple to Western Resources were encumbered and subject to the lien and security interest of Canteen Corporation, 1430 Merchandise Mart, Chicago, Illinois. Apple was indebted to Canteen in the amount of 1.2 Million Dollars, and this debt was secured by all of Apple's assets.

Tax liens had been filed by the Kentucky Revenue Cabinet against Apple's assets on December 10, 1987 in McCracken County, Commonwealth of Kentucky. These tax liens were in existence when Apple sold its assets to Western Resources in October of 1988. Eugene Stallings, the President of both Apple and Western Resources, testified that Western Resources did not intend to assume Apple's tax liability to the Kentucky Revenue Cabinet as part of the sale agreement.

Western Resources then leased the equipment and other assets back to Apple on a month-to-month basis with a monthly lease payment being Three Thousand Seven Hundred Fifty Dollars ($3,750.00). This lease-back provision was contained within the same October 12, 1988 document of

Apple reflecting the actions of its Board of Directors. [Debtor's Exhibit 5.]

*Taxes Owed by Western Resources:*

It was admitted by Western Resources that it owes taxes to the Kentucky Revenue Cabinet in the following amounts:

PRE–PETITION TAXES OWED
TO KENTUCKY REVENUE CABINET:
  $16,112.32 ....Sales & Use Taxes (# 022801)
  $ 7,090.54 ....Withholding Taxes (# 030240)
POST–PETITION TAXES OWED
TO KENTUCKY REVENUE CABINET:
  $13,172.64 [1] ..Sales & Use Taxes (# 022801)
  $ 4,089.85 ....Withholding Taxes (# 030240)

Testimony on the issue of taxes was presented at hearing by Dawn Hortin, the bookkeeper for Western Resources in 1979 and Milburn Wrye, the accountant who was employed by the Court as a consultant for Western Resources. The Kentucky Revenue Cabinet placed no witnesses on the stand, nor did it introduce any exhibits into evidence concerning the amount of taxes due and owing by either Western Resources or Apple.

The evidence that was presented revealed that some of the figures in the Kentucky Revenue Cabinet's Amended And Substituted Proof Of Preferred Claim For Taxes Due The Commonwealth Of Kentucky were duplicative and in error as they did not reflect some of the payments which had already been made by Western Resources. The evidence produced in Court by Western Resources regarding taxes was uncontroverted by the Kentucky Revenue Cabinet.

The post-hearing brief filed by the Kentucky Revenue Cabinet did not address the issue of taxes claimed to be due by Western Resources. The Kentucky Revenue Cabinet's Brief only focused on the issue of whether or not Western Resources could be held liable for the Sales and Use Taxes due and owing by Apple pursuant to KRS § 139.670 and KRS § 139.680. The Kentucky Revenue Cabinet's total claim for taxes due by both Apple and Western Re-

---

1. This figure reflects taxes for the months of January, February, March, and August of 1989, which total $31,105.71, minus $17,933.07, which

sums were seized by the Kentucky Revenue Cabinet from Western Resources for payment of part of the Sales and Use Taxes.

sources equalled Two Hundred Forty-seven Thousand Nine Hundred Eighty Dollars and Seventy-four Cents ($247,980.74), as reflected in their Amended And Substituted Proof Of Preferred Claim filed August 14, 1989. The Kentucky Revenue Cabinet does not set out in its Proof of Claim which sums were originally due and owing by Apple and which sums were the responsibility of Western Resources. However, the uncontroverted testimony in court revealed that all sums due and owing up to and including June, 1988 were the original obligation of Apple, and that the sums for Withholding and Sales and Use Taxes, etc. incurred from July, 1988 to the present are the admitted obligation of Western Resources.

*Taxes Owed By Apple:*

To determine what part of the Kentucky Revenue Cabinet's claim represented taxes owed originally by Apple, the Court relied heavily upon debtor's Exhibit 1 which placed in spread sheet form the amounts claimed to be due by the Kentucky Revenue Cabinet. The accountant, Milburn Wrye, testified line item by line item as to what he believed were the actual amounts due and owing by Apple to the Kentucky Revenue Cabinet from 12/86 through and including 6/88 less any penalties or accrued interest.

The Accountant, Milburn Wrye, agreed with the Kentucky Revenue Cabinet's figures that Apple owes Twelve Thousand Four Hundred Thirty-nine Dollars and Sixty-five Cents ($12,439.65) in Withholding Taxes from June, 1987 through June, 1988 not including any penalties or accrued interest, and that Apple owes One Hundred Thirteen Thousand One Hundred Fifty-six Dollars and Eighty Cents ($113,156.80) in Sales and Use Taxes from March, 1987 through June, 1988 not including any penalties or accrued interest.

With respect to the Corporate Income Taxes, however, which the Kentucky Revenue Cabinet claims are due by Apple in December, 1986 and December, 1987, Seven Thousand Seven Hundred Four Dollars and Seventy-five Cents ($7,704.75) and Six Thousand Twenty-seven Dollars and Sixty-

nine Cents ($6,027.69) respectively, the uncontroverted testimony revealed that Apple incurred significant losses in 1986 and 1987 and did not owe any Corporate Income Taxes. With respect to the Corporate License Taxes which the Kentucky Revenue Cabinet claims are due by Apple for 1986 and 1987, One Thousand Five Hundred Forty Dollars and Ninety-five Cents ($1,540.95) and One Thousand Two Hundred Five Dollars and Fifty-four Cents ($1,205.54) respectively, the uncontroverted testimony revealed that the balance is Sixty Dollars ($60.00), ($30.00 for each year).

Therefore, the evidence reveals that the total claim by the Kentucky Revenue Cabinet against Apple equals One Hundred Twenty-five Thousand Six Hundred Fifty-six Dollars and Forty-five Cents ($125,-656.45) not including any accrued interest or penalties. The Kentucky Revenue Cabinet's claim, however, is only that Western Resources is responsible for paying Apple's *Sales and Use Taxes plus penalties and accrued interest* because Western Resources failed to withhold those sums from the purchase price of the sale of assets on October 12, 1988. At no time during the hearing or in post-hearing briefs did the Kentucky Revenue Cabinet claim Western Resources was liable for Apple's Withholding Taxes, Corporate Income Taxes, or Corporate License Taxes. Therefore, Kentucky Revenue's Amended And Substituted Proof Of Preferred Claim For Taxes Due The Commonwealth Of Kentucky is incorrect in the listed amount of Two Hundred Forty-seven Thousand Nine Hundred Eighty Dollars and Seventy-four Cents ($247,980.74).

The uncontroverted evidence reveals that the Sales and Use Tax liability of Apple, *including* interest and penalties equals One Hundred Thirty-five Thousand Seven Hundred Fifty-five Dollars and Twenty-six Cents ($135,755.26) (for which the Kentucky Revenue Cabinet claims Western Resources is responsible), and the admitted liability of Western Resources equals Forty Thousand Four Hundred Sixty-five Dollars and Thirty-five Cents ($40,465.35) for a total claim of One Hundred Seventy-six Thou-

sand Two Hundred Twenty Dollars and Sixty-one ($176,220.61).

ISSUE—WHETHER WESTERN RESOURCES AS A SUCCESSOR TO APPLE IS RESPONSIBLE FOR THE SALES AND USE TAXES OWED BY APPLE TO THE KENTUCKY REVENUE CABINET IN THE AMOUNT OF $135,755.26 PURSUANT TO KRS SECTION 139.670 and KRS SECTION 139.680?

## CONCLUSIONS OF LAW

KRS Section 139.670 states as follows: Withholding amount of tax liability by purchaser of business.—If any retailer liable for any amount under this chapter sells out his business or stock of goods, or otherwise quits business, his successor or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the department showing that it has been paid or a certificate stating that no amount is due.

KRS Section 139.680 states as follows: Procedure in case of failure to withhold. —(1) If the purchaser of a business or stock of goods fails to withhold the purchase price as required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money. Within sixty (60) days after receiving a written request from the purchaser for a certificate, or within sixty (60) days from the date the former owner's records are made available for audit, whichever period expires the later, but in any event no later than ninety (90) days after receiving the request, the department shall either issue the certificate or mail notice to the purchaser at his address as it appears on the records of the department of the amount that must be paid as a condition to issuing the certificate.

(2) Failure of the department to mail the notice will release the purchaser from any further obligation to withhold the purchase price as above provided.

(3) The time within which the obligation of a successor may be enforced shall start to run at the time the retailer sells out his business or stock of goods or at the time that the determination against the retailer becomes final, whichever event occurs the later. (Enact. Acts 1960, Ch. 5, Art. I, § 65, effective February 5, 1960.)

According to the Bill of Sale dated October 12, 1988 entered into evidence as debtor's Exhibit 4, signed by Eugene Stallings of Apple Food and Vending, Inc., the Vendor, and Eugene Stallings of Western Resources, Inc., the Vendee, the purchase price and consideration given for the items listed therein was One Hundred Fifty-eight Thousand Seven Hundred Sixty Dollars ($158,760.00).

Kentucky Revenue Cabinet's position is that the Sales and Use Taxes owed by Apple, including accrued interest and penalties, ($135,755.26) should have been withheld from the purchase price of One Hundred Fifty-eight Thousand Seven Hundred Sixty Dollars ($158,760.00) pursuant to the above code sections. Debtor's primary argument is that the sale concerned a forgiveness of part of the debt owed by Apple to Western Resources, and that no actual money exchanged hands from which Western Resources could have withheld the amounts due by Apple to the Kentucky Revenue Cabinet.

The underlying issue is whether or not the Kentucky legislature intended the phrase "purchase price" in KRS Sections 139.670 and 139.680 to include transactions where money is not actually exchanged. The language in KRS Section 139.680 states that when the purchaser fails to withhold from the purchase price the amounts required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the "purchase price, valued in money." The plain meaning of this language reveals that the Kentucky Legislature anticipated the purchase price may be in the form of property, equipment, or various other items which are exchanged or bartered with the seller. This would explain why the Legisla-

ture added the phrase "valued in money." Further evidence that successor liability is imposed in transactions where no money actually changes hands is found in KRS § 139.090 which states as follows:

Purchase—Purchase means any transfer of title or possession, *exchange, barter,* lease or rental, conditional or otherwise, *in any manner or by any means whatsoever* of tangible personal property for a consideration.... (emphasis added).

Debtor argues that "purchase price" refers to a transaction where a business or stock of goods is sold under a contract "providing for payment to the seller or person designated by him of a purchase price in money or property...." pursuant to 103 KAR 31:150(1). Thus, debtor appears to at least acknowledge that the Kentucky legislature intended these withholding requirements to apply in situations where property is exchanged for other property. If one reads the full provision of 103 KAR 31:150(1), he will find it states as follows:

Section 1. Whenever a business or stock of goods is sold under a contract providing for payment to the seller or person designated by him of a purchase price in money or property *or providing for the assumption of liabilities,* the successor or purchaser is required to hold from the purchase price an amount sufficient to cover the liability of the seller *for sales and use taxes, penalties and interest.* The requirement to withhold from the purchase price to cover tax liability of the seller does not arise in connection with other transfers of a business such as assignments for the benefit of creditors, foreclosures of mortgages, or sales by trustees in bankruptcy.

The language "or providing for the assumption of liabilities" further indicates that it is not necessary for cash or other monetary payments to change hands for the purchase of a business to occur. *See, Bank of Commerce v. Woods,* 585 S.W.2d 577 (Tenn.1979); *Tri–Financial Corp. v. Department of Revenue,* 6 Wash.App. 637, 495 P.2d 690 (1972); and *Bates v. Director of Revenue,* 691 S.W.2d 273 (Mo.1985).

In the transaction at issue, the Court finds that a purchase price was paid in money by the forgiveness of a monetary debt and by the assumption of liabilities. Debtor purchased the items at issue from Apple subject to the security interest of Canteen Corporation. The weight of the evidence reveals that debtor intended to be responsible for Apple's debt to Canteen. Eugene Stallings, President of both Apple and Western Resources, stated on cross-examination by cabinet's counsel that he was personally liable on Apple's debts to Canteen. This evidence, along with the Bill of Sale, supports the finding that debtor did intend to assume the secured debt of Apple to Canteen Corporation, and thus relieve Mr. Stallings of any personal liability.

Transfers such as "assignments for the benefit of creditors, foreclosures of mortgages, or sales by trustees in bankruptcy" do not trigger the requirement that sufficient amounts be withheld from the purchase price to cover tax liabilities of the transferrer pursuant to 103 KAR 31:150(1). Debtor, although admitting in its post-hearing brief that the transaction at issue is not an "assignment for the benefit of creditors" in which case KRS Chapter 379 would be applicable, attempts to argue that its transaction is, however, analogous. The Court is not persuaded by this argument. This transaction is most appropriately characterized as a sale. Even the document itself which evidences the transaction is captioned "Bill of Sale."

103 KAR 31:150(1) cited above makes it clear that the successor or purchaser is responsible for any tax liability of the seller for Sales and Use Taxes, *as well as* any penalties or interest.

Analyzing debtor's argument that no funds exchanged hands so there was nothing which Western Resources could withhold, the Court finds the same would have been true if Western Resources transferred or exchanged a single item for Apple's assets (e.g. a building or a prime piece of real estate). One could argue that it is impossible to hold back part of a piece of real estate or part of a building, but the exchange or barter of property is contem-

plated by the applicable Kentucky provisions. The Kentucky statutes do not suggest how this task is to be accomplished. The statutes just state that the purchaser is liable to the extent of the purchase price, valued in money. Perhaps Western Resources should have only agreed to forgive Twenty-three Thousand Four Dollars and Seventy-four Cents ($23,004.74) of Apple's debt and conditioned the forgiveness of the remaining One Hundred Thirty-five Thousand Seven Hundred Fifty-five Dollar and Twenty-six Cent ($135,755.26) amount upon Apple's production of a receipt from the department showing that the Sales and Use Taxes had been paid. KRS § 139.670 and § 139.680 prevent Western Resources from simply ignoring the Sales and Use Taxes owed by Apple.

The Kentucky Revenue Cabinet is correct when it states that "one cannot just transfer the assets of a business to a successor and forget about the tax liabilities without complying with the bulk transfer statutes or getting clearance from appropriate authorities, such as a court of law or the applicable taxing agencies." (Memorandum of Kentucky Revenue Cabinet Opposing Debtor's Objection To Claim, unnumbered p.3). It is the purchaser's responsibility to determine if a Sales Tax delinquency exists. *State of Ohio v. Sloan,* 164 Ohio St. 579, 132 N.E.2d 460 (1956).

Western Resources was not without other options. It could have simply refused to enter into any type of agreement or sale, until Apple paid the Sales and Use Taxes it owed.

Debtor argues that the assets were not worth One Hundred Fifty-eight Thousand Seven Hundred Sixty Dollars ($158,760.00) because they were taken subject to the security interest and lien of Canteen Corporation. Debtor argues that the debt owed to Canteen Corporation exceeds the fair market value of the assets, and that the assets are worth nothing. The Court notes that Western Resources not only received the assets as part of its consideration, but it also obtained a demand promissory note from Apple on Apple's remaining debt.

Western Resources also obtained value through the lease-back provision which was all part of the October 12, 1988 agreement.

Further, Eugene Stallings, the President of Apple, was relieved of his personal liability for Apple's debt to Canteen Corporation through this sale of assets. The Court finds that Western Resources, whose President is also Eugene Stallings, cannot escape this fact, and the Court believes that the release of the President's personal liability was also a part of Western Resource's consideration for entering into this transaction. Western Resources or Stallings, as President of both Apple and Western Resources, had to have received some net value or they would not have entered into the deal.

When determining the "purchase price" under KRS § 139.090 (cited earlier), the value of the encumbrances upon the assets in question is not considered, nor is it considered in determining whether or not a "purchase" occurred.

If the debtor still feels he received nothing of value, then debtor may have simply made a bad deal from which he cannot now be protected by the Court.

Successor liability statutes have been enacted by most states and are intended to prevent the avoidance of tax liabilities upon the transfer of the assets of a business. While Kentucky has no reported cases on point, this Court's findings and conclusions are consistent with other state court interpretations and within the plain meaning of the statutes at issue. KRS § 139.670 and KRS § 139.680 were enacted by the General Assembly to protect the Commonwealth's interest when the owner of a business has accrued a Sales and Use Tax liability and subsequently sells the business without paying the tax liability. The Kentucky Revenue Cabinet is correct when it argues that this case concerns a voluntary transfer of assets to an unsecured creditor six (6) weeks before filing bankruptcy, which case falls squarely within the factual situation that KRS § 139.670 and KRS § 139.680 are designed to remedy.

Therefore, for the reasons set forth above, it is

ORDERED, ADJUDGED and DE-CREED that the Kentucky Revenue Cabinet's Amended And Substituted Proof Of Preferred Claim For Taxes Due The Commonwealth Of Kentucky is approved in part and denied in part. The Kentucky Revenue Cabinet is allowed claims in the following amounts against Western Resources:

For administrative post-petition taxes under KRS § 134.420 ........$ 17,262.49
For priority pre-petition taxes under KRS § 134.420 ................$ 23,202.86
For priority pre-petition taxes Under KRS § 139.670 and § 139.680 ..$135,755.26

SO ORDERED.