819 P.2d 482

**In re Robert C. McKEEVER and Christine McKeever, dba the Store and the Other Store, Debtors,**

**City of Prescott.**

**No. CV–91–0026–CQ.**

Supreme Court of Arizona,
En Banc.

Oct. 15, 1991.

Wm. Lee Eaton and James C. Lerch, Prescott, for debtors.

Robert M. Brutinel, Prescott, for City of Prescott.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

The United States District Court for the District of Arizona has certified two questions of law to this court pursuant to the certification procedures set forth in A.R.S. § 12–1861 *et seq.* The questions arise in connection with a claim for delinquent city sales (transaction privilege) taxes which the City of Prescott (City) filed against Robert C. and Christine McKeever (Debtors) in a Chapter 11 proceeding in bankruptcy court. The bankruptcy court found that no Arizona precedent determined whether the Debtors had successor liability for sales taxes due from a repossessed business. Therefore, the district court certified the questions of law to this court. We have jurisdiction pursuant to Supreme Court Rule 27 and A.R.S. § 12–1861.

### ISSUE

The first question certified by the District Court is: "Are the Debtors, by reason of their foreclosure on the Summerlets, 'successors' within the meaning of A.R.S. § 42–119 and Prescott City Code § 4–1–595, and as such liable for the sales tax obligation of their predecessors in interest."

The second certified question raises constitutional issues in the event we conclude the Debtors have successor liability for the taxes. Because we conclude there is no successor liability under the facts of this case, we do not address the second question.

### FACTUAL AND PROCEDURAL HISTORY

Debtors owned a convenience store in Prescott, Arizona. In August 1987, they sold the business and leased the premises to the Summerlets (Tenants). The sales agreement included the business name,

business equipment, fixtures, and rental of the business premises. The sales agreement was secured by a security interest in the equipment, fixtures, and inventory. On December 9, 1988, the Debtors filed a Chapter 11 bankruptcy petition.

In July 1989, the Tenants defaulted on the lease and the Debtors, exercising their statutory landlord's lien, repossessed the business premises and assets. Later, the Debtors petitioned the bankruptcy court to approve a sale of the business to obtain funds in partial satisfaction of their landlord's lien.

The City contends that the Tenants failed to pay city sales taxes which became due while they operated the business. The City filed a claim reflecting its belief that the Debtors have "successor liability" for the Tenants' city sales tax obligation. Debtors, on the other hand, deny that they have "successor liability" merely by reason of having repossessed the business.

## DISCUSSION

A.R.S. § 42–119 provides in relevant part:

B. A person's successors or assigns shall withhold from the purchase money an amount sufficient to cover the taxes required to be collected and interest or penalties due and payable until the former owner produces a receipt from the department showing that the department has been paid.... If the purchaser of a business or stock of goods fails to withhold sufficient purchase money as provided by this subsection, he is personally liable for payment of the amount of taxes required to be collected or paid by the former owner on account of the business so purchased, with interest and penalties accrued and unpaid by the former owner or assignors.

The Prescott City Code § 4–1–595 provides in relevant part:

(a) ... [T]he Tax Collector may apply the provisions of subsections (b) through (d) below concerning the collection of taxes when there is succession in and/or cessation of business.

\*　　\*　　\*　　\*　　\*　　\*

(c) Any person who purchases, or who acquires by foreclosure, by sale under trust deed or warranty deed in lieu of foreclosure, or by any other method, improved real property or a portion of improved real property for which the Privilege Tax imposed by this Chapter has not been paid shall be responsible for payment of such tax as a speculative builder or owner builder, as provided in Sections 4–1–416 and 4–1–417.

(d) A person's successors or assigns shall withhold from the purchase money an amount sufficient to cover the taxes required to be paid, and interest or penalties due and payable, until the former owner produces a receipt from the Tax Collector showing that all City tax has been paid or a certificate stating that no amount is due as then shown by the records of the Tax Collector. The Tax Collector shall respond to a request from the seller for a certificate within fifteen (15) days by either providing the certificate or a written notice stating why the certificate cannot be issued.

(1) If a subsequent audit shows a deficiency arising before the sale of the business, the deficiency is an obligation of the seller and does not constitute a liability against a buyer who has received a certificate from the Tax Collector.

(2) If the purchaser of a business or stock of goods fails to obtain a certificate as provided by this Section, he is personally liable for payment of the amount of taxes required to be paid by the former owner on account of the business so purchased, with interest and penalties accrued by the former owner or assignees.

The questions certified to us by the federal court, as well as the briefs of the parties, assume the applicability of both the state statute and the city code provisions. As we understand the facts, however, the claim in the bankruptcy court involves only a claim by the city for city sales tax. The

state has not advanced any claims for state tax in this court nor, as far as we know, in the bankruptcy or district court. Because the question of successor liability for city taxes is governed by city code provisions, we limit our discussion to the city code.

We note first that the City makes no argument that subsection (c) of the city code imposes liability here. Subsection (c) is the only subsection that refers to acquisitions by foreclosure, but it is limited to acquisitions of improved real property, something not involved in this case. Resolution of the first certified question therefore depends on whether subsection (d) of § 4-1-595 of the Prescott City Code imposes successor liability upon the Debtors for the city sales tax liability incurred by their predecessors.

Subsection (d) contemplates that a successor or assignee will withhold from the "purchase money" an amount sufficient to cover unpaid taxes until the former owner produces a receipt from the tax collector showing that all taxes have been paid. If the "purchaser" fails to do so, the purchaser is personally liable for the amount owed by his predecessor in interest.

As the City points out, "the purpose of successor liability statutes is to secure collection of taxes by imposing derivative liability on purchasers of a business who are generally in a better financial position to collect or pay the tax from the sale price than the seller quitting the business." *Bates v. Director of Revenue,* 691 S.W.2d 273, 276 (Mo.1985) (citing *Bank of Commerce v. Woods,* 585 S.W.2d 577 (Tenn. 1979)).

■ However, tax laws must be strictly construed in favor of the taxpayer, and should not be extended to include subject matter not specifically covered by the language of the statute itself. *Ebasco Services Inc. v. Arizona State Tax Comm'n,* 105 Ariz. 94, 97, 459 P.2d 719, 722 (1969). This is especially true where, as here, the statute seeks to impose one person's tax liability on another person in order to facilitate collection. *See Knudsen Dairy Products Co. v. State Bd. of Equalization,* 12 Cal.

App.3d 47, 52–53, 90 Cal.Rptr. 533, 537 (1970).

■ To have successor liability under subsection (d)(2) of the city code, one must be a "purchaser of a business or stock of goods." Thus, we must decide whether the Debtors are "purchasers" within the meaning of the statute. If the Debtors are found to be "purchasers," then they will be liable for the sales tax as successors to the Summerlets.

A "purchase" need not be a cash transaction. *See, e.g., Bates,* 691 S.W.2d at 277–78 (promissory note); *Woods,* 585 S.W.2d at 580–82 (cancellation of debt); *A. Copeland Enterprises, Inc. v. Commissioner of Revenue,* 703 S.W.2d 624, 625 (Tenn.1986) (same). As the California Court of Appeal stated in *Knudsen Dairy:*

> However, as we interpret it, the term "withhold" as used in the statute does not necessarily mean having physical assets in hand but simply means dealing with the purchase consideration in such a manner as to deny to the seller the benefit of the purchase consideration and to thereby make a portion of it available for the satisfaction of the tax liability.

12 Cal.App.3d at 55, 90 Cal.Rptr. at 539 (promissory note).

The key to determining whether a "purchase" has occurred for the purposes of determining successor liability, therefore, is determined by an analysis of the underlying transaction. A person acquiring property cannot withhold "purchase money" unless the transaction generates purchase consideration such that the "purchaser" is in a position to account for his predecessor's tax liability. *See, e.g., Knudsen Dairy,* 12 Cal.App.3d at 54, 90 Cal.Rptr. at 539 ("successor liability cannot be imposed when the duty to withhold ... cannot possibly be performed by the successor").

In the instant case, the Debtors exercised their statutory rights under their landlord's lien and repossessed the business premises after the Summerlets defaulted on the lease. A repossession of a leasehold is not a "purchase"; the Debtors merely exercised their rights to possession of the business premises upon default. No considera-

tion of any kind was generated by this transaction, and thus the Debtors could not have withheld the tax due. Therefore, no successor liability attached. The Debtors were similarly entitled to take possession of the fixtures, equipment and inventory pursuant to their rights under the security agreement. Again, no successor liability attached because no purchase consideration was generated.

The fact that the repossessed property was subsequently sold to satisfy the lien is immaterial to this analysis. Successor liability is measured by the mechanism used to acquire the property, not by the fact that it is subsequently sold. Clearly, a cash transaction results in successor liability because the purchaser can withhold from the purchase price the amount of tax due. Similarly, in the case of a promissory note or debt cancellation, the amount of the note or debt can be adjusted to take into account the amount of tax liability. But where, as here, there is a repossession of a business or enforcement of creditor's rights under a security agreement, *and nothing more*, there is no source from which to withhold purchase money. *See State v. Standard Oil Co.*, 39 Ohio St.2d 41, 45–46, 313 N.E.2d 838, 841 (1974) (foreclosure of defaulting debtor's property by a creditor holding a perfected security interest in such property was not a "sale" within the meaning of successor liability statute); *but see Woods*, 585 S.W.2d at 580–82 (bank held to be successor when it chose to purchase the store instead of foreclosing on its security interest).

An Arizona case involving a claim of successor tax liability is *Levy v. Arizona Dep't of Economic Sec.*, 132 Ariz. 1, 643 P.2d 704 (1982). Levy challenged a decision by the Arizona Department of Economic Security that, because he had acquired substantially all of the assets of Coronado Inns, Inc., he was therefore liable for past due unemployment taxes pursuant to A.R.S. § 23–733(D). *Id.* at 1, 643 P.2d at 704. Although this court in that case held that Levy was liable for the unemployment insurance taxes, *Levy* is distinguishable from the instant case on two grounds. First, *Levy* involved unemployment insur-

ance taxes and was decided under A.R.S. § 23–733(D), a statute much broader than the city code provision at issue in this case. Section 23–733(D) extends successor liability to "any individual or organization ... which in any manner acquires" the business of another. The court found that this broad language implied that *any* successor in interest of a continuing business was liable for unpaid unemployment taxes. *Levy*, 132 Ariz. at 3, 643 P.2d at 706. Second, Levy purchased the property at a public trustee's sale. As noted previously, a purchase, whether a cash transaction or otherwise, provides a means by which the tax obligation may be accounted for. A repossession, on the other hand, does not.

In support of its claim, the City cites cases from other jurisdictions holding that a person who acquires assets through a security interest is a "purchaser" regardless of whether a cash transaction occurs or purchase money is paid. Each of these cases is distinguishable, however, because each involved transactions in which "purchase money" could have been withheld.

In *Tri–Financial Corp. v. Department of Revenue*, 6 Wash.App. 637, 495 P.2d 690 (1972), Tri–Financial organized a wholly-owned subsidiary for the purpose of foreclosing on the lease of an insolvent and delinquent lessee. The Tax Commission of the State of Washington issued a tax warrant against Tri–Financial for the lessee's unpaid taxes, *id.* at 638–39, 495 P.2d at 691, and the Washington Supreme Court held that Tri–Financial was liable as a successor under R.C.W. 82.32.140.

*Tri–Financial Corp.* is distinguishable from the present case because it involved more than a simple foreclosure. Tri–Financial not only cancelled a lease, it also purchased the business' unused supplies, took assignment of leases on various items of equipment, and took over the lease of the premises. *Id.* at 638–39, 495 P.2d at 691. The transaction provided a means by which Tri–Financial could have adjusted its consideration to account for the unpaid taxes. For example, it could have adjusted the purchase price for the unused supplies to account for the taxes.

Moreover, the language of Washington's successor liability statute, R.C.W. 82.32.-140, is much broader than Arizona's. Under the Washington statute, a successor is liable for unpaid taxes "[w]henever any taxpayer quits business, or sells out, exchanges, or otherwise disposes of his business or his stock of goods...." *Id.* The statute also includes a broad definition of "successor," which encompasses direct and indirect acquisitions of any portion of a business: "any person who, through direct or mesne conveyance, purchases or succeeds to the business, or portion thereof, or the whole or any part of the stock of goods, wares, merchandise, or fixtures or any interest therein of a taxpayer quitting, selling out, exchanging, or otherwise disposing of his business." R.C.W. 82.04.180.

The City also relies on *A. Copeland Enterprises, Inc. v. Commissioner of Revenue*, 703 S.W.2d 624 (Tenn.1986). In *Copeland*, Copeland Enterprises subleased six fried chicken franchises to Coyote, Inc. Coyote purchased the equipment at each franchise, subject to a chattel mortgage held by Copeland. Coyote became delinquent on payments on the leases, equipment and the franchises, and eventually defaulted. In return for a transfer of the equipment and cancellation of the subleases, Copeland agreed to cancel Coyote's debt. During its operation of the franchises, Coyote incurred approximately $20,000 in tax liability for unpaid sales taxes. Copeland was assessed this amount as successor to Coyote following transfer of the franchises.

In challenging the assessment, Copeland argued that because no "purchase money" had been paid, it could not be held liable for Coyote's tax liability as a successor. *Id.* at 625. The Supreme Court of Tennessee, citing *Woods*, held otherwise. According to the court, Copeland was liable as a successor because it "stepped into the shoes of Coyote and took over the operation of the restaurants." *Id.* The court reasserted its earlier position in *Woods* that the Tennessee successor statute imposes broad liability, *id.*, and that the words "purchase money" are descriptive only and should not be

construed as limiting liability. *See Woods*, 585 S.W.2d at 581.

*Copeland* is distinguishable from the present case on the ground that, although no "purchase money" changed hands, Copeland made a conscious decision to retake possession of the franchises and continue to operate them. Copeland was aware of the tax debt due and owing, and "[i]t would have been one more factor to weigh in the decision whether to foreclose on their security interest or continue the business." *Woods*, 585 S.W.2d at 582. As the *Woods* court notes, "[w]hen [a creditor] decide[s] to purchase the [property] instead of foreclosing on the loan, it [takes] the risk that it [will] be liable for unpaid sales taxes." *Id.* Thus, as the *Woods* court suggests, had Copeland chosen to foreclose, as the Debtors did in the present case, no tax liability would have attached.

The City also relies on *In re Wine Boutique, Inc.*, 117 B.R. 506 (W.D.Mo.1990). In that case, a Chapter 11 debtor sold all of its major assets, including a liquor business. Twin City State Bank, a creditor with a security interest in all of the sales proceeds, sought to have the sale proceeds paid to it. The bankruptcy court, however, held that under Missouri's successor tax liability statute, unpaid taxes must be paid from the sales proceeds. *Id.* at 509. Again, though, this case involved a *sale* and *sale proceeds*, which could have been adjusted to reflect the tax liability.

In the instant case, the Debtors repossessed the business premises, fixtures, equipment and inventory. Because the Debtors are not "purchasers" within subsection (d) of Prescott City Code § 4–1–595, they are not liable to the City for the unpaid sales taxes of their predecessors.

In short, Debtors are not "purchasers" within subsection (d) of Prescott City Code § 4–1–595 and are, therefore, not liable to the city for the unpaid sales taxes of their predecessor.

## CONCLUSION

The answer to the first certified question is "no." The Debtors, under the facts presented, are not liable under Prescott

City Code § 4–1–595 for the city sales tax obligations of their predecessors in interest. Because of this conclusion with respect to the first certified question, we do not address the District Court's second certified question.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.