**LKS PIZZA, INC.,** Appellant,

v.

**COMMONWEALTH** of Kentucky, by and on relation of R.B. RUDOLPH, Secretary, Finance and Administration Cabinet, Appellee.

No. 2004–CA–001200–MR.

Court of Appeals of Kentucky.

July 15, 2005.

Timothy J. Crocker, Mark A. Thurmond, Crocker & Wilkey, Attorneys, Franklin, KY, for Appellant.

Stephen J. Crawford, Finance & Administration, Cabinet, Department of Revenue Frankfort, KY, for Appellee.

Before KNOPF, TAYLOR, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

Under KRS 139.670 and 139.680, sales tax liability is imposed upon a purchaser of assets of a business for any such taxes the seller has failed to remit to the Revenue Cabinet. We must decide whether such liability attaches in the event the assets are repossessed by a secured creditor, who then transfers the assets to a separate corporation which proceeds to operate a similar business. As we hold that it does not, we reverse the decision of the Franklin Circuit Court.

The facts of this case are relatively straightforward and are not disputed by the parties. PJDoughboy, Inc., a Kentucky corporation, operated a Papa John's pizza franchise in Russellville. At the time the business started, its officers, Robert Jones and Cheryl Jones, individually executed a security agreement with Shane

Harris in order to purchase equipment for use in the business. Harris retained a security interest in that equipment. In 2003, PJDoughboy was failing, and Harris exercised his right to repossess the equipment, which he then transferred to LKS Pizza, Inc., a Pennsylvania corporation. LKS then began operation of its own Papa John's franchise at the same Russellville location.

In January 2004, the Kentucky Finance and Administration Cabinet filed a complaint in the Franklin Circuit Court alleging that LKS is the business successor to PJDoughboy. PJDoughboy's delinquent sales tax liability is approximately $45,000, including tax, penalties and interest. Both parties filed motions for summary judgment. The trial court, relying upon *Bank of Commerce v. Woods*[1] and *In re Western Resources, Inc.*,[2] held that "successor liability attaches to an entity that takes over a delinquent company, regardless of whether cash exchanged hands, if the entity continues to operate the business for any period of time." Consequently, the trial court entered summary judgment in favor of the Finance Cabinet. This appeal followed.

 The Finance Cabinet seeks to impose liability pursuant to KRS 139.670 and 139.680. KRS 139.670 provides:

If any retailer liable for any amount under this chapter sells out his business or stock of goods, or otherwise quits business, his successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the cabinet showing that it has been paid or a certificate stating that no amount is due.

KRS 139.680(1) provides in pertinent part:

If the purchaser of a business or stock of goods fails to withhold the purchase price as required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money.

 As an initial matter we note that the interpretation of a tax statute is a matter of law for the court to decide.[3] And in general, the "tax statutes creating liability are to be strictly construed against the taxing authority,"[4] and "all doubts and ambiguities resolved in favor of the taxpayer."[5]

Under the plain wording of the statute, the legislature clearly sought to impose successor liability on a successor who buys into a business. The theory is that such a successor, who pays a consideration for the taxpayer's business or stock in trade, is in a better position than the Finance Cabinet to make sure that any delinquent sales taxes are paid.[6]

Our review of case law from other jurisdictions indicates that if a secured creditor acquires assets as a result of a foreclosure in which no consideration changes hands, that creditor does not thereby become liable for the debtor's unpaid sales taxes.[7] As stated by the Arizona Supreme Court:

1. 585 S.W.2d 577 (Tenn.1979).

2. 114 B.R. 621 (Bankr.S.D.Ind.1990).

3. *Laurel Run Resources, Inc. v. Com. ex rel. Calvert*, 853 S.W.2d 905, 906 (Ky.App.1992); *Gillis v. Preston*, 746 S.W.2d 77, 79 (Ky.App. 1987).

4. *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 463 (Ky.

2004); *Stoner Creek Stud, Inc. v. Revenue Cabinet*, 746 S.W.2d 73, 75 (Ky.App.1987).

5. *Stoner Creek*, 746 S.W.2d at 75.

6. *Revenue Cabinet v. Triple R Food A Rama*, 890 S.W.2d 638, 640 (Ky.App.1994).

7. *See, e.g., Northern Lights Inn v. Employment Sec. Div.*, 695 P.2d 723, 725 (Alaska 1985) (secured creditor acquiring hotel at a foreclo-

The key to determining whether a "purchase" has occurred for the purposes of determining successor liability, therefore, is determined by an analysis of the underlying transaction. A person acquiring property cannot withhold "purchase money" unless the transaction generates purchase consideration such that the "purchaser" is in a position to account for his predecessor's tax liability. *See, e.g., Knudsen Dairy,* 12 Cal. App.3d at 54, 90 Cal.Rptr. at 539 ("successor liability cannot be imposed when the duty to withhold . . . cannot possibly be performed by the successor").

In the instant case, the Debtors exercised their statutory rights under their landlord's lien and repossessed the business premises after the Summerlets defaulted on the lease. A repossession of a leasehold is not a "purchase"; the Debtors merely exercised their rights to possession of the business premises upon default. No consideration of any kind was generated by this transaction, and thus the Debtors could not have withheld the tax due. Therefore, no successor liability attached. The Debtors were similarly entitled to take possession of the fixtures, equipment and inventory pursuant to their rights under the security agreement. Again, no successor liability attached because no purchase consideration was generated.

The fact that the repossessed property was subsequently sold to satisfy the lien is immaterial to this analysis. Successor liability is measured by the mechanism used to acquire the property, not by the fact that it is subsequently sold. Clearly, a cash transaction results in successor liability because the purchaser can withhold from the purchase price the amount of tax due. Similarly, in the case of a promissory note or debt cancellation, the amount of the note or debt can be adjusted to take into account the amount of tax liability. But where, as here, there is a repossession of ·a business or enforcement of creditor's rights under a security agreement, *and nothing more,* there is no source from which to withhold purchase money. *See State v. Standard Oil Co.,* 39 Ohio St.2d 41, 45–46, 313 N.E.2d 838, 841 (1974) (foreclosure of defaulting debtor's property by a creditor holding a perfected security interest in such property was not a "sale" within the meaning of successor liability statute); *but see Woods,* 585 S.W.2d at 580–82 (bank held to be successor when it chose to purchase the store instead of foreclosing on its security interest).[8]

The cases cited by the Finance Cabinet do not mandate a different result. Most if not all of those cases involved either some consideration, *i.e.,* a fund, from which the delinquent taxes could have been with-

---

sure sale created no fund from which to pay unpaid unemployment premiums); *In re McKeever,* 169 Ariz. 312, 314–15, 819 P.2d 482, 484–85 (1991) (lessor's/secured creditor's reentry to leased premises and operation of business did not entail a purchase); *Mountain's Shadow Inn v. Colorado Dep't of Labor,* 672 P.2d 522, 524 (Colo.1983) (lessor's reentry of restaurant premises and operation of business until a new lessee could be obtained did not involve a purchase); *Lloyds Bank PLC v. State,* 109 Nev. 1111, 1116, 864 P.2d 298, 301 (1993) (creditor gaining ownership of se-

cured property by foreclosure did not generate funds from which to withhold delinquent unemployment premiums; transaction was not a sale as contemplated by statute); *State v. Standard Oil Co.,* 39 Ohio St.2d 41, 313 N.E.2d 838 (1974) (secured creditor assuming ownership pursuant to security agreement did not result in a purchase to which successor liability could attach).

8. *In re McKeever,* 169 Ariz. at 314–15, 819 P.2d at 484–85.

held,[9] or the structure of a purchase/sale which served some purpose beneficial to the creditor,[10] or a more broadly written successor liability statute.[11]

■ The Finance Cabinet's reliance on *In re Western Resources, Inc.*[12] is similarly misplaced. As an initial matter, we note that we are not bound by a federal court's interpretation of state law.[13] However, we believe the case is factually distinguishable from the present case. The facts of *Western Resources* were that an unsecured creditor, apparently under common management with the delinquent taxpayer, agreed to purchase certain of the taxpayer's assets, equipment, and vehicles in exchange for a reduction in debt. In return, the creditor leased the assets back to the taxpayer. The bankruptcy court, relying upon an administrative regulation which has since been repealed,[14] held that "a purchase price was paid in money by the forgiveness of a monetary debt and by the assumption of liabilities." [15]

In the instant case, Harris repossessed the equipment, as was permitted under the security agreement.[16] The transaction was not structured as a purchase, as was the transaction in *Western Resources*. We find it curious that the Finance Cabinet concedes that "Mr. Russell [sic] (LKS) could have repossessed and removed his equipment without successor liability attaching ...," but nevertheless asserts that LKS, in acquiring the equipment from Harris, thereby incurred successor liability. The Finance Cabinet argues that "this court must decide ... whether Harris can take the entire assets of PJDoughboy and run the pizza business as his own without also addressing the sales tax liability of its predecessor." The record, however, does not support any finding that LKS was the alter ego of Harris, or that LKS assumed the lease obligations or the franchise agreement of PJDoughboy.

The order of the Franklin Circuit Court is reversed, and this matter is remanded to

---

9. *Bates v. Director of Revenue,* 691 S.W.2d 273 (Mo.1985) (successor purchased motel property directly from delinquent taxpayer).

10. *Knudsen Dairy Products Co. v. State Bd. of Equalization,* 12 Cal.App.3d 47, 90 Cal.Rptr. 533 (1970) (secured creditor became sole shareholder of delinquent taxpayer and structured transfer of taxpayer's assets to another subsidiary corporation in exchange for a credit in the amount owed to creditor equal to the value of the assets transferred, and subsidiary corporation thereafter operated the business); *Bank of Commerce v. Woods,* 585 S.W.2d 577 (Tenn.1979) (secured creditor "purchased" equity of delinquent taxpayer in food store and operated business in order to avoid foreclosure).

11. *New Jersey Hotel Holdings, Inc. v. Director, Division of Taxation,* 15 N.J.Tax 428 (1996) (N.J.S.A.54:32B–22(c) imposes successor liability upon "any purchaser, transferee, or assignee" of a delinquent taxpayer's assets).

12. 114 B.R. 621 (Bankr.S.D.Ind.1990).

13. *Embs v. Pepsi–Cola Bottling Co.,* 528 S.W.2d 703 (Ky.1975); *Bruck v. Thompson,* 131 S.W.3d 764, 766 (Ky.App.2004).

14. 103 KAR 31:150(1). The regulation stated that the purchase price could include "money or property or providing for the assumption of liabilities." That same regulation, as noted by the court, provided that "transfers such as 'assignments for the benefits of creditors, foreclosures of mortgages ...' do not trigger the requirement that sufficient amounts be withheld from the purchase price to cover tax liabilities of the transferrer." 114 B.R. at 625.

15. *Id.* at 625.

16. *See also* KRS 355.9–609 (secured party's right to take possession of collateral after default); KRS 355.9–620 (secured party's right to accept collateral in full or partial satisfaction of obligation).

that court for proceedings consistent with this opinion.

ALL CONCUR.