**OHIO DEPARTMENT OF TAXATION, Appellant,**

v.

**B/G 98 CO., LLC, Appellee.**

[Cite as *Ohio Dept. of Taxation v. B/G 98 Co., LLC* (2001), 141 Ohio App.3d 678.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000322.

Decided March 2, 2001.

*William P. Coley II,* for appellant.

*Gregory R. Wilson Co., L.P.A.,* and *Gregory R. Wilson,* for appellee.

GORMAN, Presiding Judge.

The issue in this appeal is whether the defendant-appellee, B/G 98 Co., LLC, a successful bidder for the purchase of a debtor company's assets in bankruptcy court, is liable to the plaintiff-appellant, the Ohio Department of Taxation, for the unpaid state sales tax of the debtor company. Under R.C. 5739.14 and 5747.07(H), the tax liability of a successor company is triggered when the successor company "fails to withhold" from the purchase money an amount sufficient to pay the unpaid taxes, interest, and penalties. Reasoning that B/G was unable to withhold such monies by virtue of an order of the bankruptcy court that it pay the sale proceeds to an escrow agent, the trial court found that B/G was not liable under the statutes.

On appeal, the Department of Taxation argues that the trial court erred because the order of the bankruptcy court expressly provided that B/G's purchase of the debtor's assets was subject to the department's asserted claims of successor liability, and because the bankruptcy court had permitted B/G to reduce the purchase price by the full amount of any potential claims by the department. The department also argues that the trial court erred by failing to grant its own motion for summary judgment.

For the reasons that follow, we reverse and remand.

## FACTS

Berger McGill, a custom printing company, filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. At the time of its bankruptcy petition, Berger McGill owed the department for unpaid sales and withholding taxes that the department had earlier assessed under R.C. 5739.13

and 5747.13. The assessments had become final due to Berger McGill's failure to appeal or to petition the department for reassessments.

B/G was formed for the purpose of acquiring the assets of Berger McGill while the company was still an ongoing concern. The two parties negotiated a purchase agreement; however, several creditors of Berger McGill, including the department, objected to the proposed sale in bankruptcy court. The bankruptcy court declined to approve the sale, ordering instead that the assets of Berger McGill be auctioned to the highest bidder. B/G was the third highest bidder. But when the first and second highest bidders either reneged or failed to obtain financing, B/G was ordered by the bankruptcy court to consummate the purchase. By that time, Berger McGill had been forced to shut down its business. According to B/G, it originally had no interest in purchasing Berger McGill as anything less than a going concern, but the bankruptcy court's orders concerning the bidding process made clear that every bidder, if called upon, was obligated to close the transaction.

The bankruptcy court subsequently confirmed the sale of the assets to B/G. In its order confirming the sale, the court included specific language providing that the claims of the department "may continue to be asserted against B/G 98 Co., LLC provided, however, that these are asserted liability claims only and all defenses to said claims are expressly preserved * * *." Further, the court ordered that the "proceeds of the sale shall be paid over to the North Side Bank & Trust Company." The department did not object to the direction of the proceeds into escrow, nor did B/G request the bankruptcy court to allow it to withhold from the proceeds an amount equal to the tax assessments against Berger McGill. The proceeds were, therefore, paid over in their entirety to the North Side Bank & Trust Company.

The department subsequently asserted its successor-liability claims by filing an action against B/G in the court of common pleas. Both parties filed motions for summary judgment. Describing the issue as one of first impression, the trial court concluded that the sale of Berger McGill's assets in bankruptcy court was a judicial sale, and that case law supported the conclusion that successor liability did not apply to such sales. The trial court therefore granted B/G's motion for summary judgment while overruling the department's motion as moot.

## DISCUSSION

In its sole assignment of error, the department challenges the trial court's conclusion that the sale of Berger McGill's assets constituted a judicial sale. As we have noted previously, the trial court concluded that case law supported the conclusion that the successor-liability statutes did not apply to such sales. While defending the trial court's analysis, B/G argues that the issue of whether the sale

constituted a judicial sale is secondary to the main point: that a purchaser ordered by the court to pay the proceeds to an escrow agent cannot have done otherwise, and therefore there was no failure to withhold, and thus no successor liability under the statutes.

We first note our agreement with B/G that the department's effort at distinguishing a sale of assets under the old Bankruptcy Act from a sale under the newer Bankruptcy Code, while informative, is not dispositive. Even if we accept the department's argument that under the newer code the bankruptcy court is no longer considered to be the seller, the question ultimately is not whether the sale here met the technical definition of a judicial sale. The question, rather, is the meaning of the phrase "fails to withhold" as it appears in R.C. 5747.07(H) and 5739.14, respectively. B/G argues that this language "presupposes both a duty to withhold and the ability of the purchaser to withhold," and that it lost its ability to withhold monies when the bankruptcy court ordered it to pay the monies into escrow. As stated by B/G:

"Since in this case the United States Bankruptcy Court controlled all aspects of the sale, including the disposition of the sale proceeds, B/G was never in a position to withhold any monies from the sale proceeds, which the Bankruptcy Court ordered to be paid entirely to a secured creditor of Debtor (without objection by ODT)."

## A.  Ohio Case Law

As the trial court observed, the precise issue confronting us appears to be one of first impression in Ohio. The only case law that we can find is that cited by the trial court. In the first case, the Ohio Supreme Court held that R.C. 5739.14 imposes upon the purchaser a duty to "exercise due diligence" to determine what taxes are due and to withhold an amount of the purchase monies equal to the accrued tax. *State v. Sloan* (1956), 164 Ohio St. 579, 58 O.O. 438, 132 N.E.2d 460. In another case, the Ohio Supreme Court held that a foreclosure under a security agreement did not come within the purview of the successor-liability statutes because, in view of the "totality of the business dealings and contractual relationship" between the parties, the foreclosure was not the equivalent of a sale. *State v. Std. Oil Co.* (1974), 39 Ohio St.2d 41, 46, 68 O.O.2d 24, 313 N.E.2d 838, 841.

In a third case, a court of common pleas held that successor liability does not attach under R.C. 5739.14 when the purchaser buys the assets of the debtor company from a court-appointed receiver, since the assets have been placed in the hands of the receiver, who is considered to be the vendor. *104, Inc. v. Ohio Liquor Control Comm.* (1967), 13 Ohio Misc. 75, 42 O.O.2d 127, 233 N.E.2d 622. The court cited no authority to support its holding, other than the language of the statute, which, in its view, required the purchaser to be the immediate successor

of the company owing the taxes—*i.e.,* ·the purchaser had to purchase directly from the company and not through the court.

Finally, a second common pleas court, citing *104, Inc.,* held that a purchaser at a sheriff's sale was not liable for the delinquent taxes of the purchased company because in a sheriff's sale "the court is the real vendor." *State v. Toledo Sports Enterprises, Inc.* (1991), 62 Ohio Misc.2d 172, 174, 594 N.E.2d 180, 181. Significantly, however, that court held that "[e]ven more importantly" the state was barred by a judicial order in a former lawsuit that released all the tax liens on the subject property. *Id.*

In sum, the case law carving out an exception to successor liability for judicial sales, meaning sales in which the court acts as the vendor, consists solely of two reported common pleas decisions. Other than this rather weak authority, the only pertinent decisions of the Ohio Supreme Court make clear (1) that the successor-liability statutes apply to a sale and not a chattel foreclosure, and (2) that the purchaser in a sale has a duty of "due diligence" to ascertain what taxes are owing and to withhold an amount equal to the assessed taxes from the purchase money.

### B. Application of the "Judicial Sale" Exception

Since the trial court relied upon the "judicial sale" exception created by the two common pleas courts in *104, Inc.,* and *Toledo Sports,* the department understandably tailors its argument to challenge the conclusion that the sale of Berger McGill's assets to B/G was a judicial sale. The department correctly identifies as the determining factor in these two decisions the fact that the court, not the debtor company, was considered to be the vendor. In contrast, the department cites other cases for the proposition that, under the new Bankruptcy Code, the bankruptcy court merely supervises and provides a forum for the sale of the debtor's assets, but that the debtor in possession remains the vendor. As stated in one such case:

"Section 363 is a new provision of the Bankruptcy Code of 1978. Before then the bankruptcy court itself was conceived to be the seller when property of the bankrupt estate was sold. These judicial sales were subject to special rules and principles many of which are no longer pertinent. Under section 363, the trustee or debtor in possession is the seller and the bankruptcy court gets involved only through the requirement of notice and a hearing. Actually the statute fails to define the court's role clearly, but the practice is that the bankruptcy judge, following the hearing, will issue an order authorizing the sale (if he decides the property should indeed be sold), and after the sale is made he

will issue a second order, confirming the sale. * * * The confirmation order is appealable as a final order under 28 U.S.C. Sec. 158(d)."

We agree with the department that the "judicial sale" exception, insofar as it can be said to exist in the case law, is based entirely upon the principle that in a judicial sale the court is the vendor, and that this does not appear to be the case in a court-supervised sale under the new Bankruptcy Code.

Furthermore, we reject the position, advanced by B/G and accepted by the trial court, that the exception articulated in the common pleas cases should be extended to B/G's purchase of Berger McGill's assets because the bankruptcy court was heavily involved in the supervision, and its approval necessary for the completion, of the sale. B/G's argument ignores the fact that the rationale for the exception is that in a judicial sale the court supplants the debtor as the actual vendor, and therefore the language of the statute is, arguably, no longer applicable. Where the debtor in possession remains the vendor, the exception loses its *raison d'être*.

## C. Between a Judicial Order and a Tax Case

Despite the department's ability to distinguish *104, Inc.,* and *Toledo Sports* from the instant case, B/G is not left without an argument. As we have noted, B/G contends that the successor-liability statutes presuppose that the purchaser has the ability to withhold from the purchase price an amount equal to the accumulated tax, and that it had no such ability as a result of the bankruptcy court's order to pay the entire proceeds into escrow.

This argument, it should be noted, is distinct from the "judicial sale" exception. The argument is not concerned with who is the vendor of the assets, but what the purchaser must do, or seek to do, when there is a conflict between a statutory duty and a judicial order. Here, the bankruptcy court's order, as we have seen, preserved the department's claims against B/G but did not ostensibly grant B/G the right to withhold any monies from the proceeds in order to pay the claims.

The department challenges this argument, claiming that the bankruptcy court did, in fact, make allowance for the money to be withheld by reducing the amount of the sale price by an amount equal to the unpaid taxes. The amount of the unpaid taxes was $128,085.83 ($101.029.83 to the department and $27,045.00 to the Ohio Bureau of Employment Services). In paragraph 1(a) of the bankruptcy court's order approving the sale, the fixed dollar portion of the purchase price was amended from $684,000 to $555,914.17, a difference corresponding exactly to the amount of the unpaid taxes. Furthermore, the department presented the testimony of the attorney for Berger McGill, James C. Frooman, who stated that the purchase price reduction was made as a result of the department's written

objections to the order as it related to the accumulated taxes. According to Frooman:

"Judge Hopkins [the bankruptcy judge] sustained the objections, and there was a dollar for dollar, penny for penny adjustment to the purchase price by the opening—what would have been the opening bid that's B/G–98.

"* * * And what happened right there is the price was adjusted dollar for dollar, penny for penny. And, ultimately, it wasn't a matter of here's the purchase price and now anybody that's going to bid on the assets needs to worry about the possibility that they might be held liable. · The purchase price was adjusted in such a way that whoever bought the assets knew they bought the claim. At least that's what I understood.

"* * * I punched the calculator and came up with a number as we sat there in the court so that we knew exactly what we were talking about. And everybody knew it. Anyone that was in that courtroom knew exactly what was going on.

"* * * And not only was it resolved then, but everybody that was present at the bid process knew it. It was important. You had to know that you were potentially buying a claim. I didn't want it that way. *We'd have got more for the assets if that wasn't the case.* But anybody within the courtroom could not have not understood that. I just can't imagine how they couldn't have understood that." (Emphasis supplied.)

B/G argues that the department, in making this argument, seeks to divert attention from the statutes "by all manner of equitable and quasi-equitable arguments that are irrelevant since the Department of Taxation has no equitable powers." It seems to us, however, that this is the situation in reverse. B/G had a statutory duty to withhold the accumulated tax and did not. B/G's defense is that it could not withhold the monies under the terms of the bankruptcy court's order without being held in contempt. Such a defense to a clear statutory duty is, in our view, an appeal for equity. The appeal loses its force, however, if the bankruptcy court had already given B/G the equitable relief it needed by reducing the purchase price of Berger McGill's assets by an amount exactly equal to the amount it was statutorily obligated to withhold. As we have noted, the reduction was accompanied by a reciprocal reservation, expressly stated in the order approving the sale, that the purchase would be subject to the department's claims. What B/G seeks now, if the department's version of events is accepted, is to have it both ways: the benefit of the price reduction without the reciprocal liability.

██ It bears emphasis that the trial court granted B/G summary judgment based on the "judicial sale" exception, ruling that B/G was entitled to judgment as a matter of law. We hold that the "judicial sale" exception, such as it exists in the case law, did not apply. Furthermore, we hold that, given the evidence

surrounding the circumstances of the price reduction by the bankruptcy court, B/G was not entitled to judgment as a matter of law based upon its argument that its statutory liability for the accumulated taxes was negated by the bankruptcy court's order. There is certainly evidence upon which the department was reasonably entitled to maintain that the price reduction effectively allowed B/G to withhold from the proceeds to be paid into escrow an amount equal to the accumulated tax, and that B/G's claim of impossibility of performance ignored the practical effect of the price reduction.

We hold, therefore, that the trial court erred by granting B/G's motion for summary judgment. Accordingly, the department's first assignment of error is sustained.

In its second assignment of error, the department argues that the trial court erred by overruling as moot its motion for summary judgment. Based upon our resolution of the department's first assignment of error, the trial court obviously should have addressed the merits of the department's motion. As a reviewing court, however, we cannot consider the merits of the motion for the first time on appeal. Thus we sustain the department's second assignment only to the limited extent that we hold that the motion was not moot.

The judgment of the court of common pleas is, accordingly, reversed, and this case is remanded for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

PAINTER and SUNDERMANN, JJ., concur.